The **STATE** of Texas, Appellant,

v.

**William L. SLEDGE, William Rogers Sledge, Attorney–in–fact For William L. Sledge, & The Estate Of Gladys L. Sledge, William Robert Sledge, Independent Executor, Appellees.**

No. 14–96–01511–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 10, 1998.

---

Cavitt Wendlandt, Susan Desmarais Bonnen, Austin, for appellant.

James W. Bradford, Richard L. McElya, William D. Noel, Angleton, for appellees.

Before Chief Justice MURPHY and Justices YATES and O'NEILL.

## OPINION

LESLIE BROCK YATES, Justice.

The State of Texas appeals from a default judgment in a cross-action severed from a statutory condemnation case. The State raises twelve points of error. We reverse and remand.

### Factual and Procedural Background

The State sought to condemn land to be used as a disposal site for dredge material collected from the Gulf Intracoastal Waterway. In their original petition for condemnation, the State sought 16.451 acres of land, described as a "4 acre tract of land, together with accretions." This description of the land remained the same in their second amended petition. In the State's third amended petition, however, the State changed its description of the property to a 4 acre tract and did not mention the accretions that added another 12 acres. The State claimed it made this change because the appellees only had record title to 4 acres. Appellees argued this change was an attempt

to take 16 acres while paying for only 4 acres.

The commissioners entered an award, describing the property condemned as a 16.451 acre tract, including 4 acres, together with accretions. The commissioners awarded damages of $76,436.00 and the State filed objections to this award. Upon the filing of the State's objections, appellees filed their cross-action, alleging the State had entered their property on or about January 1, 1978, entitling appellees to interest on the commissioner's award from that date forward. Alternatively, appellees requested an amount equalling the property's reasonable rental value plus damages should the cause be dismissed. Appellees contended the court was without jurisdiction to grant the State relief because the State refused to negotiate in good faith before seeking to condemn the property. Furthermore, appellees argued the State's conduct was unconscionable, arbitrary, capricious and in violation of the Federal and Texas Constitutions. Finally, appellees included notice that they intended to seek fees, expenses, and reasonable attorney's fees under Texas Civil Practices and Remedies Code section 105.003 if appellees were successful or if the cause was dismissed.[1]

A discovery dispute occurred and appellees filed a motion for sanctions. The court ordered the State to respond to a discovery request and held in abatement any ruling on the motion for sanctions. Thereafter, appellees filed a second motion for sanctions. The court entered an order finding that the State had "engaged in a deliberate course of conduct to harass, intimidate and coerce Defendants." The court granted the motion and struck all of the State's pleadings filed after entry of the commissioner's award. The court severed the cross-action, transforming the sanctions order into a final judgment. The State pursued appellate and original proceeding relief with respect to this judgment. Motion for leave to file petition for writ of mandamus was overruled by the First Court of Appeals in October 1992. The appeal came to this court and the trial court's judgment was affirmed in April 1994. The supreme court denied writ in September 1994.

In the severed cross-action, no activity occurred from the date of severance (June 1992) until a hearing held on July 15, 1996. A notice dated April 23, 1996 was mailed to Oliver Price, assistant attorney general, advising that the cause was set for trial or dismissal docket at 9:00 a.m. on July 15, 1996. The State did not appear. The statement of facts reveals the court convened at 10:41 a.m. and sent the bailiff to page the State. When the State did not appear, the trial court allowed appellees to present evidence on their cross-action. The court awarded judgment on August 23, 1996 in favor of appellees for $204,547.53.[2]

The State filed a request for findings of fact and conclusions of law and an amended motion for new trial. In its motion for new trial, the State alleged it met the *Craddock*[3] requirements. The State filed a motion for leave to file a supplemental motion for new trial, claiming the judgment was void under TEX. CIV. PRAC. & REM.CODE ANN. §§ 39.001–.002 (Vernon 1997). On October 8, 1996, the trial court held a hearing on the State's amended motion for new trial. The State offered testimony at the hearing. On October 28, 1996, the trial court denied the motion for new trial. The court subsequently held a rehearing on the State's amended motion for new trial and, despite having denied leave to file the supplemental motion for new trial, allowed the State to present argument regarding a section 39.002 violation.

---

1. Chapter 105 of the Texas Civil Practice and Remedies Code concerns frivolous claims by state agencies. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 105 (Vernon 1997). This statute allows recovery of fees, expenses, and attorney's fees by a party in a civil suit in which the agency has asserted a cause of action against the party if: (1) the court finds the state's action is frivolous, unreasonable, or without foundation; or (2) the action is dismissed or judgment is awarded to the party. *Id.* § 105.002.

2. This amount included interest on the award from the date of occupation of the lands, legal services rendered, costs, and legal services for future appeals (with credits for these sums if the State chose not to appeal).

3. *Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124 (1939).

The trial judge sent all parties a letter stating his intention to deny the rehearing on the amended motion for new trial and first supplemental motion for new trial. The court asked appellees' counsel to prepare an order to this effect, however, no such order appears in the transcript.

## Motion for New Trial

In point of error four, the State claims the trial court erred in failing to grant the motion for new trial because the State established it met the *Craddock* requirements. These requirements include:

(1) the appellant's failure to answer was not intentional, or the result of conscious indifference, but was due to a mistake or accident;

(2) the motion for new trial sets up a meritorious defense; and

(3) the motion for new trial is filed when the granting will not occasion a delay or otherwise work an injury to the appellees.

*Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939). The supreme court has held that these requirements apply to post-answer default judgments. *See Cliff v. Huggins*, 724 S.W.2d 778, 779 (Tex.1987).

Appellees do not dispute that the State satisfied the second and third prongs of the *Craddock* test. Thus, the only issue is whether the State's failure to appear was intentional or the result of conscious indifference. Conscious indifference means failing to take some action which would seem indicated to a person of reasonable sensibilities under similar circumstances. *See Prince v. Prince*, 912 S.W.2d 367, 370 (Tex.App.—Houston [14th Dist.] 1995, no writ); *see also Guardsman Life Ins. Co. v. Andrade*, 745 S.W.2d 404, 405 (Tex.App.—Houston [1st Dist.] 1987, writ denied) (holding that for negligence to rise to level of conscious indifference, evidence must show "appellant was clearly aware of the situation and acted contrary to what such awareness dictated."). In determining whether the failure to appear was intentional or the result of conscious disregard, we must look to the knowledge and acts of the State. *See Director, State Employees Workers' Compensation Div. v. Evans*, 889 S.W.2d 266, 269 (Tex.1994).

To set aside a default judgment, the State need only show a slight excuse for failing to appear. *See State & County Mut. Fire Ins. Co. v. Williams*, 924 S.W.2d 746, 748–49 (Tex.App.—Texarkana 1996, no writ); *see also Europa Cruises Corp. v. AFEC Int'l*, 809 S.W.2d 783, 785–86 (Tex.App.—Houston [14th Dist.] 1991, no writ) (holding that the failure to answer was excused where the general manager in charge of answering the petition resigned, and a new manager was retained after the answer due date). A failure to appear is not intentional or due to conscious indifference merely because it was deliberate; it must also be without adequate justification. *See Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex.1995). Conscious indifference means more than mere negligence. *See id.*

At the October 8, 1996 hearing on the amended motion for new trial, assistant attorney general Mark Heidenheimer conceded he received notice of the "try or dismiss" docket hearing, but did not appear. The notice, dated April 23, 1996, and addressed to Oliver Price of the Attorney General's Office and to Richard McElya, attorney for appellees, stated the following:

> Judge James Blackstock has set the above styled and numbered cause for trial or dismissal docket at 9:00 a.m. on July 15, 1996, in County Court at Law No. 3 and Probate Court, Brazoria County, Texas (Room 300).

Heidenheimer testified that the lead attorney on the case, Oliver Price, retired in November 1993, and had never opened a separate file for the cross-action or made provision for substitution of counsel when he retired. Mistakenly believing the case was closed, Heidenheimer testified he prepared a formal memorandum to the Texas Department of Transportation, closed the file and sent it to storage. Heidenheimer also testified he thought the case would be dismissed because he thought appellees had received all the relief they wanted in the condemnation case.

Heidenheimer further testified he was unable to reach the opposing attorney, Richard McElya, by telephone. Heidenheimer stated that he called the correct number but got an answering machine that did not identify the location as McElya's office. Heidenheimer did not try to call again, claiming he had a mistaken belief McElya was no longer practicing law and had disconnected his phone.[4]

Heidenheimer admitted he did not call the clerk's office regarding the notice; however, he claimed that, because of his previous experience, he misinterpreted the notice. He stated that he believed this type of notice merely meant the case would be dismissed for want of prosecution if the plaintiff did not appear. If the plaintiff did appear, the case would be set for trial at a later date. Thus, Heidenheimer concluded the case would be dismissed at the July 15th setting and he did not need to appear.

█ A motion for new trial is addressed to the trial court's discretion and the court's ruling should not be disturbed on appeal absent an abuse of discretion. *See Grissom v. Watson*, 704 S.W.2d 325, 326 (Tex.1986). However, a trial court abuses its discretion by not granting a motion for new trial when all three elements of the *Craddock* test are met. *See Bank One, Texas, N.A. v. Moody*, 830 S.W.2d 81, 85 (Tex.1992). Texas courts have liberally interpreted the element of accident or mistake and have found an abuse of discretion when a trial court is too strict in its review of the defaulting defendant's conduct. *See* Julia F. Pendrey, *Attacking and Defending Default Judgments and Dismissals for Want of Prosecution by Motion, Appeal and Bill of Review*, in STATE BAR OF TEX. PROF. DEV. PROGRAM, ADVANCED CIVIL APPELLATE PRACTICE COURSE D, D–10 (1998).

For example, in a factually similar case, the supreme court found the State's failure to appear was not the result of conscious indifference. *See Evans*, 889 S.W.2d at 266. In *Evans*, the plaintiff filed a worker's compensation action and trial was set for March 26, 1990. *See id.* at 267. The plaintiff moved for a continuance and the trial was reset for March 25, 1991, with an alternate setting of May 28, 1991. *See id.* On February 28, 1991, the assistant attorney general handling the case requested the trial date be changed to April 22, 1991. *See id.* Plaintiff's counsel agreed, and a letter was sent to the clerk resetting the trial date to April 22. *See id.* The assistant attorney general handling the case resigned effective April 19, 1991 and another assistant attorney general assumed the case. *See id.* This attorney general was advised the case was set for trial on May 28, 1991, and she asserted she was unaware the State and the plaintiff had agreed to an April 22, 1991 trial date because the former attorney had failed to record the trial date on his calendar or to note it in the case file. *See id.* Because no evidence controverted the new attorney's statement that she believed the case was set for a later date, the court held that the first element of the *Craddock* test was satisfied. *See id.* at 269. After finding the State had set up a meritorious defense and that the granting of a new trial would not cause delay or otherwise work an injury, the court found the trial court's denial of the State's motion for new trial was an abuse of discretion. *See id.* at 270.

█ Here, Heidenheimer stated in his affidavit that he believed, based on the lack of an open file and his understanding that appellees had received all relief sought in the condemnation case, that the case had been dismissed. Further, he testified that he misinterpreted the court's notice and believed he did not need to appear. Appellees offered no evidence controverting Heidenheimer's belief.[5] Thus, the State met the requirement of

---

4. Richard McElya testified, however, that he has two full-time employees who answer the phone and, if they do not answer, a machine answers the phone 24 hours a day. To McElya's knowledge, Heidenheimer never called.

5. Although McElya testified that he understood the notice required the parties to appear, McElya's knowledge is irrelevant. "In determining whether the failure to appear was due to inten-

tioned disregard or conscious indifference we must look to the knowledge and acts of the *defendant.*" *Strackbein v. Prewitt*, 671 S.W.2d 37, 39 (Tex.1984) (emphasis added). Further, while there was some inconsistency in Heidenheimer's testimony concerning the date he received the notice of trial or dismissal, the State never denied it received timely notice. Thus, this testimony does not warrant dismissal or denial of

showing that the failure to appear was not intentional or the result of conscious indifference.

■ While the dissent states that "Heidenheimer offered a number of excuses, none of which adequately explains his failure to appear," a "good" excuse is not required under *Craddock. See Ferguson & Co. v. Roll,* 776 S.W.2d 692, 695 (Tex.App.—Dallas 1989, no writ). Moreover, while the State's failure to make any inquiries regarding the status of the case may constitute negligence, a defendant is not required to show that he and/or his agent were free of negligence. *See id.*

In conclusion, we hold the trial court abused its discretion in denying the State's motion for reinstatement and we sustain point of error four. Having sustained point of error four, we need not address the State's other points of error.

We reverse the judgment of the trial court and remand for trial.

PAUL C. MURPHY, Chief Justice, dissenting.

Because I believe the State has not met the first element of the *Craddock* test, I respectfully dissent.

The first element of the *Craddock* test requires a showing that the appellant's failure to answer was not intentional, or the result of conscious indifference, but was due to a mistake or accident. *Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124, 126 (1939). Although a slight excuse is sufficient, the *Craddock* requirements are not satisfied if the evidence shows the appellant ignored notice of the trial date or avoided notice and failed to make inquiries. *See Sharpe v. Kilcoyne,* 962 S.W.2d 697, 701 (Tex.App.-Fort Worth 1998, no writ)(upheld post-answer default judgment where appellant knew she was being sued,

knew her attorney would probably have to withdraw, failed to leave a forwarding address with the court, and made no inquiry to her attorney or the court); *O'Connell v. O'Connell,* 843 S.W.2d 212, 217–18 (Tex.App.- Texarkana 1992, no writ)(upheld post-answer default judgment where appellant had filed four prior motions for continuance, was aware of trial setting, wrote judge a letter explaining she could not appear based on desparate financial situation, was temporarily out of state, and needed time to hire a new attorney).

At the hearing on the amended motion for new trial, assistant attorney general Mark Heidenheimer admitted he received notice of the "try or dismiss" docket hearing, but did not appear. The notice stated the date, time, and place of the hearing. Heidenheimer offered a number of excuses, none of which adequately explains his failure to appear. Heidenheimer claimed the former lead attorney on the case, Oliver Price, had never opened a separate file for the cross-action. Heidenheimer testified he mistakenly closed the file and sent it to storage. Heidenheimer also testified he thought the case would be dismissed because he thought appellees had received all the relief they wanted in the condemnation case. The record shows, however, that Heidenheimer had been involved in the underlying condemnation case and had attended the hearing on the motion for sanctions when the trial judge struck the State's pleadings and severed the cross-action. Therefore, Heidenheimer was aware of the pendency of the severed action.

In the motion for new trial and while on the stand, Heidenheimer stated that he received the notice of trial or dismissal docket sometime during the summer of 1996. When the trial court admonished Heidenheimer regarding the date of receipt, Heidenheimer conceded he did not know the exact date of receipt.[1]

---

reinstatement. *See Smith v. Babcock,* 913 S.W.2d 467, 468 (1995).

1. The trial judge further rebuked Heidenheimer after denying the motion for new trial. The judge stated:

    I want to make something else absolutely clear. Mr. Heidenheimer, we've been through

some of this before. I find, again, through your response in the First Amended Motion for New Trial, which is over your signature, just an absolute blatant attempt to mislead the Court. Your testimony here today confirms that. You stated under oath that you received the notice of the try or dismiss docket sometime in the summer of 1996. April 23rd is

Heidenheimer also testified that he mistakenly thought the opposing attorney, Richard McElya, had terminal cancer. Heidenheimer claimed he was unable to reach McElya by telephone. Heidenheimer testified he called the correct number but got an answering machine that did not identify the location as McElya's office. Heidenheimer did not try to call again, claiming he had a mistaken belief McElya was no longer practicing law and had disconnected his phone. This testimony was controverted by Richard McElya, who testified that he has two full-time employees who answer the phone and, if they do not answer, a machine answers the phone 24 hours a day. To McElya's knowledge, Heidenheimer never called.

Finally, Heidenheimer admitted he did not call the clerk's office regarding the notice. Although Heidenheimer agreed the language of the notice was clear, he claimed that, in his experience, this type of notice merely meant the case would be dismissed for want of prosecution if the plaintiff did not appear. If the plaintiff did appear, the case would be set for trial at a later date. Appellees' counsel, McElya, testified that, when he received the notice, he knew he "was fixing to go to trial." McElya stated he understood this notice to require the parties to appear and try the case or it would be dismissed.

The majority's reliance on *Director, State Employees Workers' Comp. Div. v. Evans,* 889 S.W.2d 266 (Tex.1994) is misplaced. In *Evans,* the responsible attorney had never received the amended notice of the trial date. *Id.* at 267. The former attorney had received notice, but did not note the new trial date in the case file or on his calendar before he resigned. *Id.*

Unlike the facts in *Evans,* there is no question here regarding knowledge of the trial date. The State's attorney admits he received timely notice and, for other reasons, did not appear. Accordingly, I find *Evans* inapplicable.

I find the facts in this case analogous to cases in which the defendant received notice but claimed to misunderstand an answer was required. *See Johnson v. Edmonds,* 712 S.W.2d 651 (Tex.App.-Fort Worth 1986, no writ)(defendant received and read papers served upon him, but did not file an answer because he interpreted the notice to mean he would be sued in the future); *First Nat'l Bank v. Peterson,* 709 S.W.2d 276 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.)(defendant froze accounts in response to writ of garnishment, but did not submit funds to the court or file a written answer);[2] *Butler v. Dal Tex Mach. & Tool Co., Inc.,* 627 S.W.2d 258 (Tex.App.-Fort Worth 1982, no writ)(defendant received and read citation, but claimed he did not understand it required him to file a written answer). Because the notices clearly stated a written answer was required and the deadline for filing the answer, the appellate courts upheld the denial of the defendants' motions for new trial. *Johnson,* 712 S.W.2d at 653; *Peterson,* 709 S.W.2d at 281; *Butler,* 627 S.W.2d at 260. In each of these cases, the courts essentially found that the failure to file an answer was conscious indifference because the defendants neither sought advice nor made inquiries to clarify their understanding of the notices they received. *Johnson,* 712 S.W.2d at 652–53; *Peterson,* 709 S.W.2d at 280; *Butler,* 627 S.W.2d at 260.

The State admits it received timely notice that the case would be dismissed or tried on July 15, 1996. The State did not contend it

---

obviously not the summer of 1996. I find that offensive. And I want to convey that thought.

2. In *Moya v. Lozano,* 921 S.W.2d 296 (Tex.App.-Corpus Christi 1996, no writ), the court asserted its belief that *Peterson* was overruled by *Bank One, Texas, N.A. v. Moody,* 830 S.W.2d 81, 84 (Tex.1992). A review of *Moody* indicates the supreme court did not overrule *Peterson.* Indeed, the supreme court cited *Peterson* as a case in which the defendant's mistake of law was insufficient to meet the requirements of *Craddock. Id.* Although the facts in *Moody* were

similar to those in *Peterson* (no answer filed in response to a writ of garnishment), the supreme court found the bank's actions in *Moody* were sufficient because the bank not only froze the accounts upon receipt of the writ of garnishment, but also contacted the court and submitted the funds from the accounts into the registry of the court. *Id.* at 82. The supreme court observed that in *Peterson,* the bank froze the accounts in response to the writ, but did not answer and did not deposit the funds from the account with the court. *Id.* at 84.

made any inquiries with the court regarding the status of the case or the necessity for its appearance. "Conscious indifference" is the failure to take some action which would seem indicated to a person of reasonable sensibilities under the same circumstances. *Prince v. Prince,* 912 S.W.2d 367, 370 (Tex.App.-Houston [14th Dist.] 1995, no writ). The evidence shows Heidenheimer received notice the case would be tried or dismissed on July 15, 1996, and Heidenheimer failed to appear for trial. The trial court has discretion to determine whether the failure to appear was inadvertent or the result of intentional conduct or conscious indifference. *See Grissom v. Watson,* 704 S.W.2d 325, 326 (Tex.1986). Because the evidence supports the trial court's finding of conscious indifference, I would uphold the trial court's discretionary ruling.