# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-03-00341-CV

Quantum Electric Corporation and Michael Shayne Goodrum, Appellants

v.

Texas Light Bulb & Supply Co., Appellee

FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
NO. 267,910, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee Texas Light Bulb & Supply Co. sued appellants Quantum Electric Corporation and Michael Shayne Goodrum[1] seeking to recover damages for unpaid goods and services, plus exemplary damages and attorney's fees. When appellants failed to respond, Texas Light Bulb obtained a default judgment against them. Appellants timely filed a motion for new trial, which the trial court overruled. Appellants now appeal the trial court's decision. We affirm.

## BACKGROUND

Texas Light Bulb and Quantum entered into a contract under which Texas Light Bulb provided goods to Quantum in exchange for a promise of payment. When Quantum failed to make

---

[1] Goodrum is president of Quantum Electric Corporation. He was sued individually. We will refer to Quantum and Goodrum collectively as "appellants" unless our analysis requires that we distinguish them.

payments owed under the contract, the parties attempted to reach an agreement as to how the balance would be repaid. A third party who owed Quantum money, K.B. Homes, agreed to issue payments to Texas Light Bulb to reduce Quantum's debt. Quantum, however, made no other form of payment towards that debt.

On January 13, 2003, Texas Light Bulb sued Quantum and its president, Goodrum, claiming $10,948.14 for unpaid goods and services, and seeking exemplary damages and attorney's fees. Quantum did not file an answer to the suit. Instead, Goodrum and Quantum's office manager, Michelle Tsuhlares Goodrum, had a series of conversations with Texas Light Bulb representatives. They also delivered a check to Texas Light Bulb's office in the amount of $2,000 on January 27. Goodrum and Tsuhlares believed that Texas Light Bulb would not continue to prosecute the lawsuit as long as Quantum continued to pay on its debt. Consequently, Quantum never filed an answer.

On February 19, Texas Light Bulb moved for and was granted a default judgment against Quantum and Goodrum, jointly and severally, for $8,948.14, plus $2,500 attorney's fees and $2,500 exemplary damages. Quantum filed a motion for new trial on March 14, and a new trial hearing was held on May 5, during which all parties presented evidence. The trial court overruled the motion for new trial, concluding that Quantum had failed to satisfy the necessary elements to obtain a new trial. Quantum now appeals.

**DISCUSSION**

The disposition of a motion for new trial is within the trial court's sound discretion; we will not disturb the court's ruling absent an abuse of that discretion. *Director, State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994). A trial court abuses its discretion

2

if it has acted in an unreasonable or arbitrary manner, or without reference to any guiding rules and principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

Before a default judgment can be set aside and a new trial granted, the defendant must satisfy all elements of the *Craddock* test. *Craddock v. Sunshine Bus Lines*, 133 S.W.2d 124, 126 (Tex. 1939). The *Craddock* test is well-established: A default judgment should be set aside and a new trial ordered in any case in which (1) the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; (2) the defendant has a meritorious defense; and (3) the motion is filed at a time when the granting of a new trial will not occasion delay or work other injury to the plaintiff. *Id.* A trial court abuses its discretion by failing to grant a new trial when all elements of the *Craddock* test are met. *Evans*, 889 S.W.2d at 268. The historical trend in default judgment cases is toward the liberal granting of new trials. *Norton v. Martinez*, 935 S.W.2d 898, 901 (Tex. App.—San Antonio 1996, no writ).

Appellants argue that their failure to answer was not the result of conscious indifference, but rather was caused by accident or mistake. Conscious indifference means failing to take some action that would seem obvious to a reasonable person under the same circumstances. *State v. Sledge*, 982 S.W.2d 911, 914 (Tex. App.—Houston [14th] Dist. 1998, no pet.); *Johnson v. Edmonds*, 712 S.W.2d 651, 652-53 (Tex. App.—Fort Worth 1986, no writ). A failure to appear is not intentional or due to conscious indifference merely because it was deliberate or the result of negligence; it must be without adequate justification. *Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex. 1995). The controlling factor under this analysis is the absence of a

purposeful or bad faith failure to appear. *Craddock*, 133 S.W.2d at 125. Accordingly, the defaulting party must provide "[s]ome excuse, but not necessarily a good excuse" for failing to appear. *Id*.

Courts apply this first prong liberally and examine each case based on its own facts. *Sledge*, 982 S.W.2d at 915; *Norton*, 935 S.W.2d at 901. We look to the knowledge and acts of the defaulting party to determine whether the failure to appear was due to intentional disregard or conscious indifference. *Evans*, 889 S.W.2d at 269; *Texas Sting, Ltd. v. R.B. Foods, Inc.*, 82 S.W.3d 644, 650 (Tex. App.—San Antonio 2002, pet. denied). The defaulting party satisfies its burden if the factual assertions in the defaulting party's new trial affidavits are not controverted and if the affidavits set forth facts that, if true, negate intent or conscious indifference. *Evans*, 889 S.W.2d at 269; *Texas Sting*, 82 S.W.3d at 650-51. If the non-movant presents evidence at the new trial hearing, however, the issue becomes a question of fact for the trial court to resolve. *Young v. Kirsch*, 814 S.W.2d 77, 80-81 (Tex. App.—San Antonio 1991, no writ); *Jackson v. Mares*, 802 S.W.2d 48, 50 (Tex. App.—Corpus Christi 1990, writ denied).

In their verified motion for new trial, appellants averred that the reason they failed to respond to Texas Light Bulb's petition is that Goodrum relied upon representations made by Texas Light Bulb representatives that no default judgment would be taken if Quantum continued to make partial payments toward its debt. At the new trial hearing, Tsuhlares testified that she and Goodrum met with Texas Light Bulb representatives, and following their conversations, it was her understanding that Texas Light Bulb was willing to work with them as long as they could come to an agreement on what the payment plan would be. When asked what made Tsuhlares think that she did not have to file an answer in the lawsuit, she responded, "I thought they were working with us,

4

that we were trying to reach a payment plan. . . . I don't have a lot of experience with legal stuff, so I didn't -- it was stupid on my part. I didn't -- I thought that since we were working together that that kind of put that on hold." Tsuhlares also acknowledged that both she and Goodrum had been sued before and that they were aware of their obligation to file an answer when sued.

Reed Stewart testified for Texas Light Bulb.[2] He stated that he met with Goodrum after the lawsuit had been filed. During that meeting, Goodrum asked Stewart why Texas Light Bulb was suing him, to which Stewart responded that Goodrum was not paying anything toward his debt other than what K.B. Home paid on Quantum's behalf. According to Stewart, Goodrum responded, "Well, you can go ahead and sue me, but I'm not going to dispute it. You'll get your judgment. Then what are you going to do then?" Stewart further testified that he made no representations to Tsuhlares or Goodrum that Texas Light Bulb would not continue to prosecute the lawsuit. When asked if there was any question "that you were going to go forward with your lawsuit . . . after you left that meeting," Stewart responded, "There's no question." He also stated that he believed Goodrum understood that he would continue to prosecute the lawsuit.

Larry Lee, Jr., president of Texas Light Bulb, testified next. Lee stated that he spoke to Goodrum on the phone after the lawsuit was filed. Goodrum needed someone from Texas Light Bulb to sign the K.B. Home check, which was made out to both Quantum and Texas Light Bulb, so that he could apply the proceeds toward his debt. Lee testified that he explained to Goodrum over the phone that although he would send someone to sign the check, "it's with the understanding that

---

[2] The record does not clearly reveal Stewart's role with Texas Light Bulb, but it is clear that he is a representative of the company.

5

this may bring your balance down. It certainly doesn't keep you from the debt that you owe us." He added that he told Goodrum "very specifically that I am not going to stop my legal ramifications of getting the money that you owe us and have owed us for a long, long time." According to Lee, Goodrum understood that.

As fact finder, the trial court is charged with the duty of ascertaining the true facts surrounding the default circumstances, and it is within the court's province to judge the credibility of the witnesses and to determine the weight to be given their testimony. *Vannerson v. Vannerson*, 857 S.W.2d 659, 665 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *Jackson*, 802 S.W.2d at 51. Here, the trial court was free to believe that appellants understood their obligation to respond to the lawsuit; that no one at Texas Light Bulb represented to Tsuhlares or Goodrum that the suit would not be prosecuted so long as Quantum continued making payments; that Goodrum understood that Texas Light Bulb would continue to prosecute its suit; and that Quantum and Goodrum nevertheless decided to take no action. In sum, we hold there is evidence upon which the trial court could conclude that appellants' failure to respond to the lawsuit was not due to mistake or accident, but was the result of conscious indifference. Thus, the trial court did not abuse its discretion in overruling the motion for new trial, and we will not disturb its ruling. *See Craddock*, 133 S.W.2d at 126; *see also Johnson*, 712 S.W.2d at 652-53. We need not consider whether appellants met the other *Craddock* elements because they failed to demonstrate that their failure to appear was not the result of conscious indifference. *See* Tex. R. App. P. 47.1. Accordingly, we overrule appellants' issues.

**CONCLUSION**

Because appellants failed to establish that their failure to respond to the lawsuit was not the result of conscious indifference, we hold that the trial court did not abuse its discretion in overruling appellants' motion for new trial. We therefore affirm the trial court's judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: February 12, 2004

7