**Reversed and Remanded and Memorandum Opinion filed July 6, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-00586-CV

---

### SVT, LLC AND ROBERT ORR, Appellants

### V.

### SEASIDE VILLAGE TOWNHOME ASSOCIATION, INC., Appellee

---

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2015-64585**

---

### MEMORANDUM OPINION

Appellee Seaside Village Townhome Association, Inc. ("Seaside") filed suit against appellants SVT, L.L.C and Robert C. Orr (collectively, "SVT") to quiet title to a plot of vacant land. The trial court granted summary judgment finding Seaside the owner of the vacant lot. The trial court also granted Seaside's motion for summary judgment on SVT's unjust enrichment counterclaim after SVT failed to file a summary judgment response. SVT filed a motion for new trial, which was overruled by operation of law. In a single issue on appeal, SVT argues that the trial

court erred by failing to grant its motion for new trial. We reverse and remand.

## I. BACKGROUND

Orr is the principal of SVT, L.L.C., but also served on Seaside's Board of Directors. SVT is a real estate developer that developed a residential community known as "Seaside Village" in Seabrook, Texas. Seaside is the homeowner's association for Seaside Village. In August 2014, in accordance with subdivision declarations, SVT transferred control of the subdivision to Seaside. However, SVT retained title to the common area of a vacant plot of land, which the parties refer to as the "Repsdorph Property."

In 2015, Seaside filed suit to quiet title to the Repsdorph Property and also sought damages based on claims for breach of fiduciary duty and breach of contract. SVT filed counterclaims to quiet title to the Repsdorph Property, and sought a declaratory judgment seeking title and possession, in addition to a claim for unjust enrichment. SVT sought reimbursement from Seaside for the following expenditures: (1) $17,615.52 in loans that SVT allegedly made to Seaside; (2) unspecified amounts paid to improve and re-plat the plot; and (3) unspecified amounts of property taxes that SVT paid on the Repsdorph Property.

Both sides filed motions for summary judgment. On May 27, 2016, the trial court granted Seaside's motion for partial summary judgment and declared that Seaside owned the Repsdorph Property. On November 7, 2016, the trial court entered an order severing Seaside's claims to quiet title, declaratory judgment that SVT's Declaration Amendment is invalid, and Order for Defendants to rescind the Declaration Amendment in the Harris County Real Property Records, assigning a new cause number to the severed case. SVT appealed the decision to this Court, where we affirmed the trial court's decision in favor of Seaside. *See SVT, L.L.C. v. Seaside Vill. Townhome Ass'n, Inc.*, No. 14-17-00012-CV, 2018 WL 3151396, at

2

*9 (Tex. App.—Houston [14th Dist.] June 28, 2018, no pet.) (mem. op.). On December 2, 2016, the trial court granted summary judgment in favor of SVT on Seaside's "breach of contract and breach of fiduciary duty—piercing the corporate veil" claims.

In February 2019, Seaside moved for traditional summary judgment on SVT's remaining counterclaims for slander of title and equitable reimbursement, and for no-evidence summary judgment on SVT's counterclaims for quantum meruit and adverse possession. The hearing was originally set for February 28, 2019, but SVT's counsel requested a one-week extension due to a conflict. On February 22, 2019, SVT and Seaside entered into a Rule 11 Agreement wherein SVT acknowledged that its claim concerning ownership of the Repsdorph Property had already been adjudicated. Accordingly, SVT agreed that the only pending counterclaim SVT possessed was for unjust enrichment. Furthermore, because of this agreement, the parties agreed to forego the hearing set for February 28 and, according to SVT, agreed to reschedule the hearing to a future date.

On the same day Seaside filed the Rule 11 Agreement with the court, Seaside filed an amended notice of hearing, setting the summary judgment for hearing on April 18, 2019. Danielle Butler ("Butler"), a paralegal for SVT's counsel in charge of calendaring all hearings and deadlines within the firm, was listed as the default service contact in the court's e-filing system. For unknown reasons, Butler was not notified of the hearing. However, SVT acknowledges that notification of the hearing was sent to two of its attorneys: Ashish Mahendru ("Mahendru") and Darren Braun ("Braun"). Although Mahendru and Braun were notified of the summary judgment hearing, they alleged that they believed that Butler had also received the notification. As a result, the attorneys did not calendar the hearing and subsequently did not respond to the motion for summary judgment or attend the oral hearing.

On April 18, 2019, the trial court granted Seaside's traditional motion for summary judgment on SVT's unjust enrichment claim. On May 17, 2019, SVT filed a motion for new trial, "and/or" leave to file a late summary judgment response, arguing that: (1) its failure to file a summary judgment response was not intentional or the result of conscious indifference; (2) it had filed, with the motion for new trial, a summary judgment response that established a question of fact on its unjust enrichment claim; and (3) Seaside would not suffer any undue delay or other injury if the motion for new trial were granted. SVT attached to its motion for new trial an unsworn declaration by its counsel,[1] Mahendru. In his declaration, Mahendru states that "the e-filing system did not send notification to Danielle Butler, the firm's paralegal, who is in charge [of] processing and calendaring all hearings and deadlines within the firm. Ms. Butler is listed as service contacts [sic] on the e-filing website for this case, and has been for the past several years."[2] Mahendru's declaration further stated that:

> while [attorneys Mahendru and Braun] received the e-filing notification, they mistakenly expected that Danielle Butler had also received the notification and had appropriately calendared the hearing date and deadlines contained in the filing. But because Ms. Butler actually did not receive it, no one at the firm calendared the hearing date or the due date for the response, and did not attend the oral hearing.

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 132.001 (a), (d) (providing that an unsworn declaration may be used in lieu of a written sworn, declaration or affidavit required by statute or required by a rule, order, or requirement adopted as provided by law). Mahendru's declaration was in writing and stated "I declare under penalty of perjury that the following facts are true and correct and within my personal knowledge." This substantially complies with § 132.001. *See id.*; *see also Beonney v. U.S. Bank Nat'l Assoc.*, No. 05-15-01057-CV, 2016 WL 3902607, at *3 (Tex. App.—Dallas July 14, 2016, no pet.) (mem. op.) (concluding that main requirements under § 132.001 are that declaration be in writing and subscribed by declarant as true under penalty of perjury).

[2] Mahendru's declaration includes an image showing Mahendru, Braun, and Butler as the listed law firm service contacts for the underlying case.

. . .

SVT's counsel first learned of the summary judgment order [the evening it was signed], when they received a Case Subscription report from the Harris County District Clerk. Immediately, I investigated what happened and, for the first time, realized that the e-service notification for the amended notice of hearing omitted Ms. Butler as shown in the filing details below . . . .[3]

The motion for new trial was set for oral hearing on July 25, 2019. In its response, Seaside averred that SVT's motion for new trial was overruled by operation of law on July 2, 2019, seventy-five days after the judgment was signed, but noted the court retained plenary power until August 1, 2019. *See* Tex. R. Civ. P. 329b(c)). SVT filed a timely notice of appeal on July 23, 2019.[4]

## II. ANALYSIS

In a single issue, SVT argues that it established its entitlement to a new trial under both the modified *Craddock* test and the *Carpenter* test, and thus, the trial court abused its discretion by failing to grant its motion for new trial. *See Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 688 (Tex. 2002); *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1934).

### A. STANDARD OF REVIEW & APPLICABLE LAW

We review a trial court's denial of a motion for new trial for abuse of discretion. *See In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006) (per curiam); *Dir., State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994). A trial court abuses its discretion if "it renders an arbitrary and unreasonable decision

---

[3] Mahendru's declaration included an image of the e-service notification listing only Mahendru and Braun as the service contacts for their law firm.

[4] We note that the trial court held a hearing on July 25, 2019. Seaside attempted to present witnesses; however, the trial court refused to hear witness testimony and informed the parties that the court clerk would reach out about scheduling an evidentiary hearing pertaining to the motion for new trial. It is unclear from the record why the trial court did not hold the evidentiary hearing.

lacking support in the facts or circumstances of the case." *Samlowski v. Wooten*, 332 S.W.3d 404, 411 (Tex. 2011).

To overturn a default judgment, the movant must demonstrate that: (1) the failure to reply to the motion for summary judgment was not intentional or the result of conscious indifference, but was due to an accident or mistake; (2) the motion for new trial sets up a meritorious defense; and (3) a new trial would cause no undue delay or injury to the nonmovant. *See Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 925 (Tex. 2009); *Craddock*, 133 S.W.2d at 126. However, in a no-answer summary judgment, when a party fails to respond to a motion for summary judgment, courts have applied a modified version of the *Craddock* factors. *See Weech v. Baptist Health Sys.*, 392 S.W.3d 821, 825–26 (Tex. App.—San Antonio 2012, no pet.); *Huffine v. Tomball Hosp. Auth.*, 979 S.W.2d 795, 798–99 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *see also Varady v. Gyorfi*, No. 09-15-00237-CV, 2016 WL 1468859, at *4 (Tex. App.—Beaumont Apr. 14, 2016, no pet.) (mem. op.). In the modified version of *Craddock*, the first and third elements are the same; however, under the second prong, instead of setting up a "meritorious defense," the modified *Craddock* test requires the movant to raise a material question of fact in its motion for new trial. *See Weech*, 392 S.W.3d at 825–26; *Huffine*, 979 S.W.2d at 798–800.

In *Carpenter*, the Texas Supreme Court held that a motion for leave to file a late summary-judgment response should be granted if the movant can establish the first and third *Craddock* elements. *See Carpenter*, 98 S.W.3d at 688.

## B.   APPLICATION

We first address the standard of review. SVT states that it is unclear as to whether the *Carpenter* or the modified *Craddock* test applies in this instance. *Carpenter* generally applies when a party learns of the summary judgment hearing before the hearing date but after the deadline to file a response. *See id.* Because

SVT technically received notice of the hearing before the deadline to file a response but failed to file a response until after the summary judgment hearing due to an alleged mistake, we will apply the modified *Craddock* test. *See Weech*, 392 S.W.3d at 825–26; *Huffine*, 979 S.W.2d at 798–800.

1. **SVT's Failure to Respond was Not Intentional or the Result of Conscious Indifference**

Under the first prong, we must determine if SVT's failure to reply to the motion for summary judgment was intentional or the result of conscious indifference or whether it was due to an accident or mistake. *See Dolgencorp*, 288 S.W.3d at 926. Texas courts apply the first element of the *Craddock* test liberally. *Gotcher v. Barnett*, 757 S.W.2d 398, 402 (Tex. App.—Houston [14th Dist.] 1988, no writ). Under this lenient standard, even negligence of counsel "will not preclude the setting aside of" summary judgment. *Beck v. Palacios*, 813 S.W.2d 643, 645 (Tex. App.—Houston [14th Dist.] 1991, no pet.). Generally, "some excuse, although not necessarily a good one, will suffice to show that a defendant's failure to file an answer [or appear] was not because the defendant did not care." *In re R.R.*, 209 S.W.3d at 115. The absence of an intentional failure to answer or appear, rather than a real excuse for not answering, is the controlling factor. *See Milestone Operating, Inc. v. ExxonMobil Corp.*, 388 S.W.3d 307, 310 (Tex. 2012) (per curiam) (citing *Craddock*, 133 S.W.2d at 125).

During the July 25, 2019 motion for new trial hearing, counsel for Seaside argued SVT should have been aware of the hearing date because both attorneys were served with notice, and a Rule 11 agreement to reset the summary judgment from March was "followed up" by the amended notice of hearing. SVT averred the Rule 11 Agreement to reset the hearing did not establish a new date for the hearing (2RR5), and further alleged that Butler is in charge of processing and calendaring all incoming notices of hearings, and all other deadlines for the firm. SVT admitted

that SVT's counsel received notification of the summary judgment hearing; however, SVT alleged that Butler, the person listed as the default service contact for SVT's law firm, did not receive the notification and surmised that Butler did not get served with notice of the new date either because she was dropped from the service list, or a different platform for service was used. Thus, SVT's counsel did not calendar the hearing themselves because they mistakenly believed that Butler had received the same notification and had calendared the hearing. But because Butler did not receive the notification, the hearing was not calendared. The arguments of SVT's counsel at the hearing were consistent with and supported by Mahendru's declaration.

Seaside argues SVT was consciously indifferent, whereas SVT argues that it simply made a "big mistake." We conclude that SVT satisfied the *Craddock* factors. Seaside argues that this case is similar to *Prince v. Prince*, wherein the appellant knew he was being sued for divorce, acknowledged receipt of the petition, and had notice from his wife at least a week prior to the hearing that she was going to get the divorce, but still failed to file an answer or make any inquiry about the import of the "papers" he received. *See* 912 S.W.2d 367, 369–70 (Tex. App.—Houston [14th Dist.] 1995, no pet.). However, in *Prince*, we concluded that "the appellant made no inquiry, and neither sought help nor advice about the import of the 'papers' he had received." By contrast, SVT did not actively ignore the notice informing it of the hearing date. Instead, counsel did not calendar the hearing because they mistakenly believed Butler received the notification and would calendar it for counsel. Furthermore, in its motion for new trial, SVT included the notification receipt from the e-filing system, which evidenced that SVT's counsel was notified, but not Butler.

Here, SVT's counsel reasonably explained his failure to answer and appear at the summary judgment hearing by presenting uncontroverted evidence that the

hearing was not placed on his calendar because of mistake. Mistakes in internal office procedures and other circumstances that result in an event not being properly calendared demonstrate that the failure to appear and respond was not intentional but due to accident or mistake. *See, e.g.*, *Evans*, 889 S.W.2d at 269 ("Ms. Stroud's predecessor simply misdated the trial date on his calendar and conveyed the wrong information to Ms. Stroud when she replaced him. Ms. Stroud believed the case was set for a later date, thus, her failure to appear was not intentional, but was due to an accident or mistake."); *Dalmex, Ltd. v. Apparel Enters., Inc.*, 455 S.W.3d 241, 243–44 (Tex. App.—El Paso 2015, no pet.) (counsel did not attend hearing because "it was not placed on his calendar by mistake"; specifically, although the notice was delivered to the firm's offices, "the secretary who calendars [attorney's] appointments was out for the day and did not see the notice because it was not delivered to her desk pursuant to standard office procedure"); *see also Evans v. Woodward*, 669 S.W.2d 154, 155 (Tex. App.—Dallas 1984, no writ) ("The record also shows that Evans had retained counsel to represent him in this suit and that the failure to file an answer was the result of confusion in the attorney's office rather than indifference on Evans' part."); *Cervantes v. Cervantes*, No. 03-07-00381-CV, 2009 WL 3682637, at *7–8 (Tex. App.—Austin Nov. 5, 2009, no pet.) (mem. op.) (concluding that a paralegal's misunderstanding regarding a need to calendar an answer deadline was sufficient to negate conscious indifference on the attorney's part); *Hubbard v. Preston*, No. 11-99-00226-CV, 2000 WL 34235122, at *2 (Tex. App.—Eastland Aug. 17, 2000, no pet.) (mem. op.) (concluding that appellant satisfied the first element of *Craddock* when appellant's attorney stated that "failure to appear at the trial setting 'was not intentional or due to neglect but was a result of an oversight' in failing to calendar the trial setting").

Based on the evidence before us, we cannot conclude that SVT's failure to

respond was intentional or due to conscious indifference. *See Dolgencorp*, 288 S.W.3d at 926; *see also State v. Sledge*, 982 S.W.2d 911, 916 (Tex. App.—Houston [14th Dist.] 1998, no pet.) ("Moreover, while the State's failure to make any inquiries regarding the status of the case may constitute negligence, a defendant is not required to show that he and/or his agent were free of negligence."). We conclude that SVT satisfied the first prong of the modified *Craddock* test.

**2.    SVT Raised a Material Question of Fact on Its Unjust Enrichment Claim**

Under the second prong, we must determine whether SVT raised a genuine issue of material fact on its unjust enrichment claim. *See Weech*, 392 S.W.3d at 825–26; *Huffine*, 979 S.W.2d at 798–800. "Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits." *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied) (op. on reh'g). Unjust enrichment occurs when a person has either "wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Id.*; *see also Jessen v. Duvall*, No. 14-16-00869-CV, 2018 WL 1004659, at *8 (Tex. App.—Houston [14th Dist.] Feb. 22, 2018, no pet.) (mem. op.).

Seaside argues that unjust enrichment is not an independent cause of action. However, we have recently rejected that argument. *See Walker v. Walker*, No. 14-18-00569-CV, ___ S.W.3d ___, ___, 2020 WL 1951631, at *4 n.8 (Tex. App.—Houston [14th Dist.] Apr. 23, 2020, no pet.) (rejecting appellants' implied argument that unjust enrichment is not an independent cause of action and holding there was "no impediment" to bringing a claim for unjust enrichment); *see also Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App.—Houston [1st Dist.]

2007, pet. denied) ("Unjust enrichment is an independent cause of action.").[5]

Seaside further argues that there cannot be a genuine issue of fact as to unjust enrichment because it did nothing wrong, and SVT failed in "establishing Seaside Village's unconscionability." Similarly, Seaside argues that SVT failed to prove fraud, duress, or the taking of undue advantage. However, we have rejected both of those arguments:

> Ronald and Layne also moved for no evidence and traditional summary judgment on the basis that there is no evidence of "fraud, duress, or 'the taking of undue advantage.'" We have already held that fraud, duress or the taking of an undue advantage is not an element of unjust enrichment, even though the doctrine "is typically found to apply" under one of these scenarios. As we stated, "[t]he right to recover under an unjust enrichment theory does not depend on the existence of a wrong" and "[t]o obtain restitution on a theory of unjust enrichment, a wrongful act need not be shown." Under the doctrine, as we noted, "one who receives benefits, *even passively*, which would be unjust to retain ought to make restitution for those benefits."

*Walker*, 2020 WL 1951631 at *4 (internal citations omitted); *see Innovative Conveyor Concepts, Inc.*, 300 S.W.3d at 367; *see also Walker v. Walker*, No. 14-

---

[5] Although several Texas courts of appeals hold that there is no such cause of action, the Texas Supreme Court has suggested otherwise. *Compare Elledge v. Friberg-Cooper Water Sup.*, 240 S.W.3d 869, 870–71 (Tex. 2007) (per curiam) (reaffirming that limitations period for unjust-enrichment claims is two years); *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 737 (Tex. 2001) (discussing limitations period for unjust-enrichment claims); *Fortune Prod. v. Conoco, Inc.*, 52 S.W.3d 671, 685 (Tex. 2000) (referring to unjust-enrichment cause of action); *and HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 885, 891 (Tex. 1998) (referring to unjust-enrichment cause of action and two-year limitations period), *with Spellmann v. Love*, 534 S.W.3d 685, 693 (Tex. App.—Corpus Christi–Edinburg 2017, pet. denied) (noting unjust enrichment is not an independent cause of action); *Richardson Hosp. Auth. v. Duru*, 387 S.W.3d 109, 114 (Tex. App.—Dallas 2012, no pet.) (same); *R.M. Dudley Constr. Co. v. Dawson*, 258 S.W.3d 694, 703 (Tex. App.—Waco 2008, pet. denied) (same); *Hulen v. Hamilton*, No. 02-06-00288-CV, 2008 WL 553812, at *4 (Tex. App.—Fort Worth Feb. 2, 2008, no pet.) (mem. op.) (same). As noted, this Court has previously concluded that a plaintiff may be able to bring a claim for unjust enrichment as an independent cause of action. *See Walker v. Walker*, No. 14-18-00569-CV, ___ S.W.3d ___, ___, 2020 WL 1951631, at *4 n.8 (Tex. App.—Houston [14th Dist.] Apr. 23, 2020, no pet.); *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

16-00357-CV, 2017 WL 1181359, at *8 (Tex. App.—Houston [14th Dist.] Mar. 30, 2017, no pet.) (mem. op.) ("The right to recover under an unjust enrichment theory does not depend on the existence of a wrong."); *RDG Ltd. P'ship v. Gexa Corp.*, No. 14-04-00679-CV, 2005 WL 949171, at *4 (Tex. App.—Houston [14th Dist.] Apr. 26, 2005, no pet.) (mem. op.) (affirming that unjust enrichment does not require an underlying wrong to be committed; rather, unjust enrichment can be based on the "mere passive receipt of a benefit that would be unconscionable to retain").

In the present case, SVT alleged that it had been paying property taxes on the Repsdorph Property for years because SVT believed that it owned the property. SVT continued to pay until the May 27, 2016 ruling adjudicating Seaside the owner. SVT also alleged that it spent approximately $30,000 on improving the land prior to the 2016 ruling. Finally, SVT claimed in its petition that Orr had "loaned Seaside approximately $17,615.52." Orr testified in his deposition that he had loaned Seaside "approximately [$]17,000." Seaside makes various arguments as to why it is not "unjust" for Seaside to retain these benefits, such as claiming that SVT unilaterally decided to spend money on improvements without consulting Seaside and Seaside did not know it was receiving those benefits. However, whether SVT will ultimately prevail on the claim is not the issue before us. We simply conclude that SVT presented more than a scintilla of evidence that Seaside potentially received benefits that would be unconscionable to retain. *See Weech*, 392 S.W.3d at 825–26; *Huffine*, 979 S.W.2d at 798–800. Thus, SVT satisfied the second prong of the modified *Craddock* test. *See Dolgencorp*, 288 S.W.3d at 926.

### 3. Seaside Will Not Suffer Undue Delay

Under the third prong, we must determine whether SVT demonstrated that granting its motion for new trial would cause no undue delay or injury to Seaside. *See id.* "The purpose of the third element of the *Craddock* test . . . is to protect a

12

plaintiff against the sort of undue delay or injury that would result in a disadvantage when presenting the merits of the case at a new trial, 'such as a loss of witnesses or other valuable evidence.'" *Id.* at 929.

Seaside argues that SVT failed to carry its burden to show that granting a motion for new trial would not cause undue delay to Seaside. However, "[o]nce a defendant has alleged that granting a new trial will not injure the plaintiff, the burden of going forward with proof of injury shifts to the plaintiff." *Evans*, 889 S.W.2d at 270; *see Dolgencorp*, 288 S.W.3d at 929 ("Once Dollar General alleged that granting a new trial would not injure Lerma, the burden of proof shifted to Lerma to prove injury."). In its motion for new trial, SVT alleged that if a new trial were granted, Seaside would "not suffer any undue delay or other injury." This shifted the burden to Seaside to prove undue harm or delay. *See Dolgencorp*, 288 S.W.3d at 929; *Evans*, 889 S.W.2d at 270. In its response to SVT's motion for new trial, Seaside argued that granting the motion or allowing SVT to file a late response would "delay a final ruling in this matter, which has been pending for [sic] in this Court for nearly four years." However, this delay will typically ensue when a trial court decides to grant a motion for new trial. Seaside has not alleged the type of undue delay or harm required to prevail under the third *Craddock* element, such as "a loss of witnesses or other valuable evidence." *Evans*, 889 S.W.2d at 270.

Seaside further argues that SVT failed in its burden to prove no undue harm or delay because SVT "neither offers to pay Seaside Village's costs in obtaining final judgment nor indicates it is ready and able to proceed to trial." However, neither are requirements for meeting the third *Craddock* factor; they are merely two questions to consider in making the determination of whether undue delay or injury will occur. *See Angelo v. Champion Rest. Equip. Co.*, 713 S.W.2d 96, 98 (Tex. 1986); *see also Dolgencorp*, 288 S.W.3d at 929; *Evans*, 889 S.W.2d at 270.

13

Additionally, we note that offering to pay the other party's costs normally arises in the context of default judgments, where the nonmovant incurs the additional costs of prosecuting a default judgment. *See Europa Cruises Corp. v. AFEC Intern.*, 809 S.W.2d 783, 786 (Tex. App.—Houston [14th Dist.] 1991, no pet.) ("Any possible injury to a plaintiff can be negated by an offer in a motion for new trial to pay costs incurred by plaintiff as a result of obtaining the default judgment."). SVT's failure to file a summary judgment response did not cause Seaside to incur additional costs because Seaside had already filed its motion for summary judgment. Likewise, although SVT did not affirmatively state that it was willing to "proceed to trial" immediately, the record reflects that on the same day that SVT filed its motion for new trial, it also filed its proposed response to Seaside's motion for summary judgment. This demonstrated SVT's willingness and readiness to proceed to trial. *See Angelo*, 713 S.W.2d at 98.

We conclude that SVT met its initial burden under the third factor of the modified *Craddock* test by demonstrating that Seaside would not suffer any undue harm or delay. We also conclude that Seaside failed in its burden to prove that it would suffer undue delay or harm.

### 4.     Summary

SVT has established all three elements of the modified *Craddock* test. *See Huffine*, 979 S.W.2d 798. The record does not reflect that SVT intended to "abandon or frustrate the proceedings." *Dolgencorp*, 288 S.W.3d at 930. Therefore, we conclude that the trial court abused its discretion by allowing SVT's motion for new trial to be overruled by operation of law. We sustain SVT's sole issue.

### III. CONCLUSION

We reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.

/s/    Margaret "Meg" Poissant
Justice


Panel consists of Chief Justice Christopher and Justices Jewell and Poissant.