DOLGENCORP OF TEXAS, INC., d/b/a
Dollar General Store, Petitioner,

v.

Maria Isabel LERMA, Individually,
et al., Respondents.

No. 08–0032.

Supreme Court of Texas.

July 3, 2009.

David M. Gunn, Constance H. Pfeiffer, Kevin D. Jewell, Jessica M. Moore, Clifford L. Harrison, for Petitioner.

Alice Oliver–Parrott, Ediberto Jose Trevino Jr., Maria Teresa Arguindegui, Robert L. Collins, for Respondents.

PER CURIAM.

This appeal arises from a post-answer default judgment entered against Dolgencorp of Texas, Inc., d/b/a Dollar General Store ("Dollar General") when its counsel failed to appear for trial because he was in a preferential trial setting in another county. Because Dollar General established it was entitled to a new trial pursuant to the factors set out in *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939), we reverse and remand for a new trial.

On May 9, 2000, a fire damaged several stores at the Palm Village Shopping Center in Brownsville. Four tenants ("Lerma") sued Dollar General, alleging its negligence caused the fire. The case was originally set for trial in Cameron County on Monday, February 24, 2003. At docket call on the preceding Friday, Lerma announced ready. Dollar General's attorney, Clifford Harrison, had called earlier in the week and announced ready, but Harrison's associate, Christopher Sachitano, appeared at docket call and informed the court that Harrison was preferentially set for trial in Harris County on Tuesday, February 25. The trial judge instructed the parties to return on Monday for trial but advised them that he had a full docket and would decide what to do when the case was reached. The court concluded by saying: "We'll see what happens when we get here on Monday. I don't ever object to people going to another Court."

On Monday, February 24, while the original trial court was hearing another matter, Lerma's counsel requested and obtained a transfer of the case to another district court for trial. Sachitano told the new trial judge that Harrison was the attorney prepared to try the case and that Harrison was in a preferential trial setting in another county. Sachitano also told the court that he personally was not qualified or prepared to try the case. Sachitano testified at the motion for new trial hearing that during a discussion in chambers the new trial judge told Sachitano that he would not have to try the case, but he would have to pick a jury that day. The trial judge also said he would work with the attorneys on scheduling.

A jury was selected and instructed to return Wednesday, February 26 at 1:30 p.m. After the jury was dismissed, Sachitano stated he would have the Harris County court coordinator keep in contact with the trial court. The trial judge instructed his staff "to tell the jurors to make sure that we have their correct home and work phone numbers in case anything changes ... in case we have to start the case earlier or later. To be on stand by."

In the two days after jury selection and on the morning of February 26, the trial court's office received numerous calls from the Harris County judge and court coordinator where Harrison was in trial. Sachitano and his secretary also called and advised the trial judge's office that

the Harris County suit would not be concluded before Wednesday afternoon.

On Wednesday at 1:30 p.m., the trial court called the case for trial. Neither Harrison nor Sachitano were present. The trial judge told the jury that he had received calls informing him Harrison was still in trial in Harris County, but that he expected Harrison himself to call, and that the "court [did] not take too kindly to their mannerism and the respect for the court system down here in south Texas." The judge discharged the jury, proceeded with a bench trial, and entered judgment against Dollar General.

The next day, the judge in the Harris County case faxed the trial judge a letter stating he had been having "difficulty making contact with [the trial judge]" and advising that Harrison was still in trial in Harris County. The letter provided, in part:

> When I first learned there might be conflicting trial settings, I asked my coordinator to contact you and see if we could work on an agreement. She left several messages with your staff, and actually talked with you briefly on Monday. Since then, my staff has attempted to reach you by telephone on numerous occasions and left messages asking you to call me back. For some reason, we are having difficulty making contact with you. Realizing the seriousness of the situation, that justice and fairness were at stake, and out of desperation, I had my staff contact [the regional presiding judge] for advice. It is my understanding that his office has also had difficulty reaching you.

Citing *Craddock*, Dollar General filed a motion for new trial. In it, Dollar General asserted that Harrison's failure to appear was not intentional nor the result of conscious indifference and the default judgment should be set aside. After conducting an evidentiary hearing, the trial court denied the motion. The court of appeals affirmed. 241 S.W.3d 584.

Dollar General now petitions this Court for review. It asserts (1) its motion for a new trial satisfied the *Craddock* test and the trial court abused its discretion by denying the motion; and (2) there is legally insufficient evidence to support the judgment. Lerma counters that *Craddock* is inapplicable because this was a trial on the merits rather than a default judgment and because Dollar General waived its right to equitable relief by not filing a motion for continuance. Even if *Craddock* applies, Lerma asserts Dollar General has not met the *Craddock* elements. Lerma also asserts there is legally sufficient evidence to support the judgment.

■ Initially, we disagree with Lerma's assertion that because Dollar General participated in jury selection, this is an appeal from a trial on the merits rather than a default judgment. A post-answer default judgment occurs when a defendant who has answered fails to appear for trial. *Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex.1979). Even though Dollar General participated in jury selection, there is no evidence it intended to later abandon the proceedings. Its failure to attend trial when the case was called on Wednesday afternoon cannot realistically be classified as anything other than a failure to appear. The judgment against Dollar General is a default judgment.

In *Craddock*, we held that a default judgment should be set aside and a new trial granted when the defaulting party establishes that (1) the failure to appear was not intentional or the result of conscious indifference, but was the result of an accident or mistake, (2) the motion for new trial sets up a meritorious defense, and (3) granting the motion will occasion no delay or otherwise injure the plaintiff. 133 S.W.2d at 126. In *Ivy v. Carrell*, 407

S.W.2d 212, 213 (Tex.1966), we extended *Craddock* to post-answer default judgments.

■ We review a trial court's refusal to grant a motion for new trial for abuse of discretion. *Cliff v. Huggins,* 724 S.W.2d 778, 778 (Tex.1987). When a defaulting party moving for new trial meets all three elements of the *Craddock* test, then a trial court abuses its discretion if it fails to grant a new trial. *Old Republic Ins. Co. v. Scott,* 873 S.W.2d 381, 382 (Tex.1994).

Dollar General references *Smith v. Babcock & Wilcox Construction, Co.,* 913 S.W.2d 467 (Tex.1995), to support its position that its failure to appear was not intentional or the result of conscious indifference. There, the Smiths' attorney sought continuance of a trial setting because he was set for trial in another county. *Id.* at 467. After the court denied the motion, the attorney stated in a letter to the court that he understood the court would reconsider his motion for continuance on the date of trial if the other case actually went to trial at the same time. *Id.* The court, however, did not share this understanding and dismissed the case for lack of prosecution when the attorney failed to appear on the trial date. *Id.* at 468. The trial court later denied the Smiths' motion to reinstate the case. *Id.* Applying the *Craddock* standard, we held that

> failure to appear is not intentional or due to conscious indifference within the meaning of the rule merely because it is deliberate; it must also be without adequate justification. Proof of such justification—accident, mistake or other reasonable explanation—negates the intent or conscious indifference for which reinstatement can be denied.

*Id.* Accordingly, we held the attorney's failure to appear was not intentional or due to conscious indifference because "[h]e was actually in trial in another county and believed, based upon his credible explanation, that the court would grant a continuance for that reason." *Id.*

We distinguished the facts in *Smith* from those in *Smock v. Fischel,* 146 Tex. 397, 207 S.W.2d 891, 892 (1948). In *Smock,* we held that a trial court did not abuse its discretion by proceeding to trial when defendant's counsel was in trial in another county because, among other things, the attorney had made no effort to resolve the conflicting trial settings and had failed to contact the judge on the day of trial to tell him of the attorney's whereabouts. *Id.* In contrast, the Smiths' attorney attempted to resolve the conflict before trial and provided a credible explanation for why he believed a continuance would be granted. *Smith,* 913 S.W.2d at 468.

In the present case, Harrison was actually in trial in Harris County when he failed to appear in Cameron County for the Dollar General suit. At the motion for new trial hearing, Harrison testified that when he realized he had a conflicting preferential trial setting, he sent his associate, Sachitano, to announce the conflict at docket call for the Dollar General suit. In addition, while he was in trial in Harris County, he asked the Harris County judge and trial coordinator to call and notify the Cameron County trial court that he was still in trial. He also instructed his associate and secretary to call and apprise the Cameron County court of his status. The court coordinator for the Cameron County trial court submitted an affidavit confirming the fact that she received calls from the Harris County judge and trial coordinator as well as Sachitano and his secretary, each of whom confirmed that Harrison would be in trial in Harris County beyond his scheduled trial date for the Dollar General suit. Dollar General provided affidavits from Sachitano, his secretary, and the Harris County coordinator verifying the communications.

■ Lerma, relying on *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682 (Tex.2002), asserts that by failing to file a verified motion for continuance, Dollar General waived its right to equitable relief. In *Carpenter*, Cimarron received notice of Carpenter's summary judgment motion and scheduled hearing on the motion but failed to file a timely response. *Id.* at 684. Two days before the scheduled summary judgment hearing, Cimarron realized the mistake and, on the day of the hearing, filed a motion for leave to file an untimely response and motion for continuance. *Id.* at 684–85. The trial court denied Cimarron's motions and granted Carpenter summary judgment. *Id.* at 685. Cimarron filed a motion for new trial, claiming that the summary judgment should be set aside on the equitable grounds articulated in *Craddock*. *Id.* We held that *Craddock* does not apply to a motion for new trial filed after summary judgment is granted when the nonmovant failed to respond after having notice and an opportunity to obtain leave to file a late response. *Id.* at 686. We reasoned that in that situation, the rules relating to summary judgment afford the defaulting party an opportunity to obtain additional time to file a response, either by moving for leave to file a late response or by requesting a continuance of the summary judgment hearing. *Id.* at 685; *see* TEX.R. CIV. P. 166a(c), 251. We concluded *Craddock* should not apply because "[o]ur purpose in adopting the *Craddock* standard was to alleviate unduly harsh and unjust results at a point in time when the defaulting party has no other remedy available." *Carpenter*, 98 S.W.3d at 686.

Lerma asserts that under *Carpenter*, *Craddock* does not apply in this case because Dollar General had notice of the trial and an opportunity to seek a continuance under the rules of civil procedure. *See* TEX.R. CIV. P. 251. We disagree that *Carpenter* applies here. In *Carpenter*, the defaulting party knew of its failure to file a response in time for it to move for leave to file a late response, and it did so. 98 S.W.3d at 684–85. We stressed that *Craddock* did not apply because the defaulting party realized its mistake before judgment was entered and at a point in time when the rules of procedure provided other remedies. *Id.* at 685. But in this case, Dollar General was not actually aware that trial would begin on February 26. At the hearing on the motion for new trial, Harrison testified: "I reasonably believe[d] based on everything I knew that I was not to be called to trial [in Cameron County] while I was in trial in Harris County, that the court would work with the schedule." Harrison testified he based this belief on the fact that the court indicated it would work with his schedule and was aware that he was still in trial in Harris County. He also based his belief on the fact that the court had collected the jurors' phone numbers so that they could be contacted in the event the case needed to start later.

■ We conclude that Harrison's failure to appear was not intentional or the result of conscious indifference. He attempted to resolve the conflict before trial, apprised the court of his whereabouts the day of trial, and provided a credible explanation for why he believed the court would delay trial. *See Smith*, 913 S.W.2d at 468. Dollar General satisfied the first prong of the *Craddock* test.

■ The second prong of the *Craddock* test requires Dollar General to "set up" a meritorious defense in its motion for new trial.[1] 133 S.W.2d at 126. Setting up

---

1. Dollar General does not assert we should dispense with any of the remaining *Craddock* factors, and we do not address the issue. *See*

*Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 86, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988) (hold-

a meritorious defense does not require proof "in the accepted sense." *Ivy,* 407 S.W.2d at 214. Rather, the motion sets up a meritorious defense if it alleges facts which in law would constitute a defense to the plaintiff's cause of action and is supported by affidavits or other evidence providing prima facie proof that the defendant has such a defense. *Id.* (testimony given at the motion for new trial hearing used to determine whether defendant provided prima facie evidence of a meritorious defense); *see Guar. Bank v. Thompson,* 632 S.W.2d 338, 339 (Tex.2006). Once such requirements are met, controverting evidence offered by the nonmovant should not be considered. *Ivy,* 407 S.W.2d at 214.

■ Dollar General's motion for new trial stated, in part:

Plaintiffs' Second Amended Petition alleged that Dolgencorp was negligent in "the lack of a complete fire wall and fire protection devices such as a sprinkler system." Additionally, plaintiffs had indicated in deposition questions that it may be alleged that Dolgencorp was negligent since, several hours before the fire, several Dollar General employees and customers indicated that they had smelled something burning and that there had been problems with a light fixture.... Dolgencorp was prepared to present evidence that the Brownsville Fire Marshal as well as another fire investigator had investigated the fire, and specifically whether the fire was electrical in origin, and had ruled out the probability that the fire was caused by the light fixture or that the fire was electrical in origin. In fact, according to the fire marshal's report, the fire was still open for investigation as it was possible that it was "incendiary" in origin.

With respect to plaintiffs' allegations involving the fire wall and sprinkler system, evidence was developed during discovery, and would have been presented at trial, that there was no defect whatsoever in the fire wall ... [and] there was no requirement in the plans, applicable ordinances or fire codes for any sprinkler system, and that the Dollar General Store had passed the applicable city inspections....

At the hearing on the motion for new trial, Dollar General called a certified fire investigator hired by the shopping center's insurer to testify. *See id.* The investigator testified that he had conducted an investigation and could not identify the specific cause of the fire. In addition, the Brownsville Fire Department's fire investigation report provided: "The fire originally was thought to have come from a ballast from one of [Dollar General's] lights ... however, it was later determined that the electrical system was not the cause of this fire even though several deficiencies were found in the electrical system. After systematically ruling out all other accidental causes it was determined that this fire is of a suspicious nature and remains open for investigation." Dollar General also called the manager of the Palm Village Shopping Center who testified that the City had inspected before the fire and determined that Dollar General's store, including the fire wall, complied with relevant regulations and ordinances.

The facts alleged in Dollar General's motion, if true, would constitute a defense to Lerma's cause of action. Further, the evidence and affidavits Dollar General submitted provided prima facie support for

ing that requiring proof of meritorious defense, in absence of valid service and notice of the judgment, violates due process rights); *Mathis v. Lockwood,* 166 S.W.3d 743, 744 (Tex.2005) (dispensing with second *Craddock* element when post-answer default judgment was rendered without notice to defaulting party).

the defense. Dollar General satisfied the second prong of the *Craddock* test.

■ As to the third *Craddock* prong, Dollar General asserted that setting aside the default judgment would not harm or injure Lerma. Dollar General stated it was prepared to defend the case, and offered to pay any reasonable expenses incurred by Lerma in obtaining the default judgment. Once Dollar General alleged that granting a new trial would not injure Lerma, the burden of proof shifted to Lerma to prove injury. *See Mathis,* 166 S.W.3d at 744; *Dir., State Employees Workers' Comp. Div. v. Evans,* 889 S.W.2d 266, 270 (Tex.1994); *Estate of Pollack v. McMurrey,* 858 S.W.2d 388, 393 (Tex. 1993).

■ At the motion for new trial hearing, Lerma's attorney alleged that granting a new trial would harm the plaintiffs because Dollar General would "now know what we were going to be alleging . . . and what we're going to be arguing in front of a jury." The purpose of the third element of the *Craddock* test, however, is to protect a plaintiff against the sort of undue delay or injury that would result in a disadvantage when presenting the merits of the case at a new trial, "such as a loss of witnesses or other valuable evidence." *Evans,* 889 S.W.2d at 270. Lerma asserted a "harm" common to all parties facing a motion for new trial after obtaining a post-answer default judgment. But Lerma did not allege a specific injury, such as the loss of witnesses or valuable evidence, that would negate Dollar General's showing of no undue delay or injury. If Lerma's "harm" were sufficient to establish injury under *Craddock,* there would be no new trials granted. We hold that Lerma did not prove that the granting of a new trial would cause such harm or injury as would preclude the granting of a new trial. Thus, Dollar General satisfied the third prong of the *Craddock* test.

Because Dollar General's motion for new trial satisfied all three elements of the *Craddock* test, the trial court abused its discretion by denying the motion, and Dollar General is entitled to a new trial. Dollar General, however, further asserts the Court should reverse and render judgment against Lerma because there is legally insufficient evidence from the bench trial to support the judgment.

■ Generally, if an appellate court holds there is legally insufficient evidence to support a judgment after a trial on the merits, the proper disposition is to reverse and render judgment. *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 86 (Tex.1992); *Mobil Oil Corp. v. Frederick,* 621 S.W.2d 595, 596 (Tex.1981); *see* Tex.R. Civ. P. 43.3, 60.2. But in *Holt Atherton,* we held that when a plaintiff fails to present legally sufficient evidence at an uncontested hearing on unliquidated damages following a *no-answer* default judgment, the proper disposition is to remand for a new trial on the issue of damages. 835 S.W.2d at 86. We reasoned that the plaintiff should be afforded a second opportunity to present evidence in support of its claims because "as a practical matter, in an uncontested hearing, evidence of unliquidated damages is often not fully developed." *Id.*

Courts of appeals have reached differing results as to the proper disposition of a case when there is legally insufficient evidence to support a *post-answer* default judgment. *Compare Renteria v. Trevino,* 79 S.W.3d 240, 243 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (rendering judgment without discussion), *and Wallace v. Ramon,* 82 S.W.3d 501, 506 (Tex.App.-San Antonio 2002, no pet.) (same), *and Sutton v. Hisaw & Assocs. Gen. Contractors, Inc.,* 65 S.W.3d 281, 286 (Tex.App.-Dallas 2001, pet. denied) (same), *with In re Estate of Wilson,* 252 S.W.3d 708, 715 & n. 8 (Tex.

App.-Texarkana 2008, no pet.) (noting authorities allowing a case reversed on no evidence grounds to be remanded when the facts have not been fully developed, such as in a post-answer default judgment), *and Armstrong v. Benavides,* 180 S.W.3d 359, 364 (Tex.App.-Dallas 2005, no pet.) (remanding under *Holt Atherton* because facts had not been fully developed), *and Raines v. Gomez,* 143 S.W.3d 867, 869 (Tex.App.-Texarkana 2004, no pet.) (remanding without discussion), *and Thorp v. Adair & Myers,* 809 S.W.2d 306, 308–09 (Tex.App.-Houston [14th Dist.] 1991, no writ) (remanding for further factual development in the interest of justice).

■ No-answer and post-answer default judgments differ in the issues a plaintiff is required to prove. In cases of no-answer default, such as *Holt Atherton,* a defaulting defendant admits all facts properly pled in the plaintiff's petition except for the amount of unliquidated damages. *Holt Atherton,* 835 S.W.2d at 83. Thus, the plaintiff is only required to prove its claim for unliquidated damages. *Id.; see* Tex.R. Civ. P. 243. But if the defendant files an answer, as in this case, a trial court may not render judgment on the pleadings and the plaintiff is required to offer evidence and prove all aspects of its claim. *Bradley Motors, Inc. v. Mackey,* 878 S.W.2d 140, 141 (Tex.1994); *Stoner,* 578 S.W.2d at 682. We, however, see no reason why this difference should result in judgment being rendered rather than remanded in cases of post-answer default.

In both types of default judgment, a plaintiff must present evidence, but the uncontested proceedings are often abbreviated and perfunctory. In the absence of opposing counsel, an uncontested trial, like an uncontested damages hearing, is less likely to result in a fully-developed factual record. *See Holt Atherton,* 835 S.W.2d at 86; *see also U.S. Fire Ins. Co. v. Carter,* 473 S.W.2d 2, 3 (Tex.1971) (noting an ap-

pellate court may remand when the case has not been fully developed). That is reflected in this case. Although Lerma had the burden to prove all elements of its claim, the trial court opined "[t]his will be only an issue of damages, not negligence, [so] prove it up the way you want to prove it up."

■ We conclude that the better rule is the one expressed in *Holt Atherton* and by the courts of appeals that have remanded for a new trial after a post-answer default judgment rather than rendering judgment. Under the rule we adopt, Dollar General's legal sufficiency challenge will not result in greater relief than the new trial afforded by our resolution of its motion for new trial argument; thus, we need not and do not address it.

Finally, this record compels us to note that judges and lawyers should, and in most instances do, extend common and professional courtesies to other judges and lawyers. *See* Tex.Code Jud. Conduct, Preamble (noting, in part, that judges must strive to enhance and maintain confidence in our legal system and should be governed in their judicial conduct by general ethical standards); Tex. Lawyer's Creed-Amandate for Professionalism, III(11) ("I will not take advantage, by causing any default or dismissal to be rendered, when I know the identity of an opposing counsel, without first inquiring about that counsel's intention to proceed."). Here, despite attempts by other judges to contact the trial judge and both Lerma's counsel and the trial judge being aware that Dollar General's counsel was in trial elsewhere, judgment was entered against a party that by neither word nor deed exhibited intention to abandon or frustrate the proceedings. It is a credit to the trial bench and bar that this type of record rarely ends up before appellate courts.

We reverse the judgment of the court of appeals. The case is remanded to the trial court for a new trial.