02-09-057-CV
















 

 

 

 

COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT WORTH

 

NO. 2-09-057-CV

 

 

HAMPTON-VAUGHAN
 FUNERAL                                                     APPELLANTS

HOME, HAMPTON-VAUGHAN 
FUNERAL DIRECTORS, HAMPTON-
VAUGHAN FUNERAL DIRECTORS, 
INC., SCI FUNERAL SERVICES OF 
TEXAS, INC., HAMPTON-VAUGHAN 
CRESTVIEW MEMORIA, SCI TEXAS 
FUNERAL SERVICES, INC., AND 
CRESTVIEW MEMORIAL PARK

 

V.

 

BEVERLY
 N. BRISCOE, DON I.                                                          
 
 APPELLEES

BRISCOE, JR., REBECCA L.

LLENAS, LORI K. MORROW,

CHERL L. TEAGUE, THOMAS E.

BRISCOE, AND ANNA M. EVANS

 

------------

 

FROM THE 89TH
DISTRICT COURT OF WICHITA
COUNTY

 

------------

 

OPINION

 

------------

          This
is an appeal from a no-answer default judgment. 
In three issues, appellants––Hampton-Vaughan Funeral Home, Hampton-Vaughan
Funeral 








Directors,
Hampton-Vaughan Funeral Directors, Inc., SCI Funeral Services of Texas, Inc.,
Hampton-Vaughan Crestview Memoria, SCI Texas Funeral Services, Inc., and
Crestview Memorial Park––contend that the trial court abused its discretion by (1)
striking as untimely the second supplement to their motion to set aside default
judgment, (2) denying their motion to set aside default judgment, and (3) awarding
damages that lacked sufficient evidentiary support.  We reverse and remand for a new trial.

Background
Facts

          Appellees––Beverly N. Briscoe, Don I.
Briscoe, Jr., Rebecca L. Llenas, Lori K. Morrow, Cherl L. Teague, Thomas E.
Briscoe, and Anna M. Evans––sued appellants and two others for breach of
contract, fraud, negligent misrepresentation, fraudulent nondisclosure,
intentional infliction of emotional distress, negligence, negligence per se,
negligent hiring, and DTPA violations arising out of appellants’ alleged
mishandling of the ashes of appellees’ deceased relative, Don Briscoe.  Appellees requested actual damages, punitive
damages, DTPA damages, and attorney’s fees.

          Appellees served appellants but not
the remaining two defendants. Counsel for appellants and appellees agreed to a
forty-five day extension on the answer date.[1]  Despite the extension, appellants failed to
file an answer, and appellees moved for a default judgment over seven months
later.  Appellants did not receive notice
and thus did not respond.

          After a hearing on August 1, 2008, the
trial court rendered a default judgment against appellants on every cause of
action except the negligent hiring and DTPA claims.  Although the trial court had orally
pronounced judgment in specific amounts for each appellee at the close of the hearing
on the motion for default judgment, the written judgment reflects only one
award of $850,000 to all appellees as a “collective unit.”[2]  Additionally, the trial court awarded appellees
$340,000 in attorney’s fees.

          Upon receiving notice of the default
judgment, appellants timely filed a motion to set it aside.  Attached
to the motion is the affidavit of Christopher Farmer, in-house
litigation counsel for appellants. 
Farmer averred that he thought the parties’ representatives were going to
meet and discuss settlement. He understood that his presence at the meeting was
not necessary, but he assumed appellees’ counsel would contact him after the
meeting to report whether the case had settled. 
Further, Farmer said that he attempted to contact appellees’ counsel
several times, but his telephone calls were not returned.  He claimed that he received no further
communication from appellees’ counsel or any other communication about the
case’s status until he received a notice of default judgment.

          Appellants filed two supplements to their motion to set
aside the default judgment; the second supplement was filed more than thirty
days after the trial court rendered default judgment.[3]  At the hearing on the motion to set aside
default judgment, the trial court granted appellees’ motion to strike appellants’
second supplement for exceeding the thirty-day window in rule 329b.  See
generally Tex. R. Civ. P. 329b.  The
trial court subsequently denied the motion to set aside the default judgment.

Striking of Second Supplement

          In their first issue, appellants
contend that the trial court abused its discretion by striking their second
supplement to the motion to set aside default judgment as untimely.  The trial court signed the default judgment
on August 22, 2008.  Appellants filed
their motion to set aside the default judgment on September 10, 2008, a
supplemental motion that same day, and a second supplement on October 22,
2008.  Appellees moved to strike the
second supplement, claiming that it was not filed within thirty days of the
default judgment as required by rule 329b(a). 
Tex. R. Civ. P. 329b(a).  However,
because appellees did not nonsuit the two remaining defendants until November
25, 2008, the default judgment was not yet final––and therefore not subject to
the rule 329b deadlines––until that date.  See Clarendon
Nat’l Ins. Co. v. Thompson, 199 S.W.3d 482, 492 (Tex. App.––Houston [1st
Dist.] 2006, no pet.); Sheraton Homes,
Inc. v. Shipley, 137 S.W.3d 379, 381 (Tex. App.––Dallas 2004, no pet).  Accordingly, the trial court abused its
discretion by striking appellants’ second supplement as untimely.  We sustain appellants’ first issue.

Propriety of Default Judgment

          In their second issue, appellants
argue that the trial court erred by denying their motion to set aside the
default judgment.

A default judgment should be set aside and a new
trial granted when the defaulting party establishes that (1) the failure to
appear was not intentional or the result of conscious indifference, but was the
result of an accident or mistake, (2) the motion for new trial sets up a
meritorious defense, and (3) granting the motion will occasion no delay or
otherwise injure the plaintiff.  Dolgencorp of Tex., Inc. v. Lerma, 288
S.W.3d 922, 925 (Tex. 2009); Craddock v.
Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124, 126 (1939).  We review a trial court’s refusal to grant a
motion for new trial for abuse of discretion. 
Dolgencorp, 288 S.W.3d at 926;
Cliff v. Huggins, 724 S.W.2d 778, 778
(Tex. 1987).  When a defaulting party
moving for new trial meets all three elements of the Craddock test, then a trial court abuses its discretion if it fails
to grant a new trial.  Dolgencorp, 288 S.W.3d at 926; Old Republic Ins. Co. v. Scott, 873
S.W.2d 381, 382 (Tex. 1994).

Failure to Answer Not Intentional or Result of Conscious
Indifference

In their initial motion to set aside, appellants
contended that their failure to answer was not the result of conscious
indifference because their attorney “was attempting to resolve matters . . . on
a pre-litigation basis.”  Farmer’s
affidavit, which was attached to the original motion, indicates that after
appellees filed the litigation, Farmer “entered into a Rule 11 agreement with
[appellees’] counsel,” which “involved an extension for the filing of an
Answer.”  The letter was attached as an
exhibit to the motion.  Farmer also
averred that

          4.       In addition to that correspondence, I had communications with
counsel for [appellees] by which I understood that counsel for [appellees], and
his clients, intended to meet with a representative of Hampton-Vaughan Funeral
Home to discuss the circumstances of the incident made the basis of the suit.  I understood that a Hampton-Vaughan
representative was going to explain to the [appellees’] family what occurred
and an attempt would be made at that time to resolve the litigation.  It was not anticipated that I would be
present at this meeting.

 

          5.       I assumed that the meeting would occur and that opposing
counsel would get back with me on whether or not the litigation had been
resolved.

 

          6.       I also phoned counsel a number of times during . . . Spring,
2008 and thereafter to determine the status, and did not receive a return call
or communication.  My next communication
was receiving the default notice on Friday, August 29, 2008. . . .

 

          7.       The event of default judgment was not as a result of
indifference on behalf of any of [appellants]. 
The anticipated meeting at Hampton-Vaughan did not occur and I did not
become aware of that fact until after I learned of the default.

 

          8.       I did not receive any notice of the filing of [appellees’]
motion for default or notice of the hearing (if any) on the default motion.  If I had received notice of a hearing on
[appellees’] Motion for Default Judgment, I would have immediately retained
counsel and had counsel file an Answer on behalf of all [appellants].

 

Appellees responded to appellants’ motion and
attached an affidavit from their counsel. 
He does not confirm or deny that Farmer attempted to contact him; however,
he does contend that Farmer was consciously indifferent by failing to make
efforts to set up the meeting between a Hampton Vaughan representative and
appellees, and he also avers that he “did not agree to be responsible for any
aspect of arranging the proposed meeting.” 
Moreover, he contends that the letter about extending the answer date
was not an enforceable Rule 11 agreement as Farmer claimed.

          Intentional
or conscious indifference for purposes of Craddock
means “that the defendant knew it was sued but did not care.”  Fidelity
& Guar. Ins. Co. v. Drewery Constr. Co., 186 S.W.3d 571, 576 (Tex.
2006).  A defendant’s mere negligence
does not show conscious indifference.  Id.; see
also Levine v. Shackelford, Melton,
& McKinley, L.L.P., 248 S.W.3d 166, 168 (Tex. 2008) (denying motion for
rehearing).  A defendant must offer some
excuse, which need not necessarily be a good excuse.  McClure
v. Landis, 959 S.W.2d 679, 681 (Tex. App.––Austin 1997, pet. denied).

          Regardless
of whether the letter attached to Farmer’s affidavit constituted an enforceable
Rule 11 agreement, Farmer knew that if the answer date had been extended, it
was for only a short time.  But he also assumed
that a meeting would take place and that he would hear whether or not the suit
was going to proceed; it is not clear whether Farmer thought appellees’ counsel
was responsible for arranging this meeting or whether a Hampton Vaughan
employee was responsible.  Regardless, this
situation is unlike that in Levine v.
Shackelford, Melton, & McKinley, L.L.P., in which the attorney
attempted but failed to obtain an extension, agreed to answer by the deadline,
failed to file an answer, was contacted more than once by opposing counsel that
the deadline had been extended and that a default would be taken, emailed a
draft answer to opposing counsel, and yet attended mediation without having
filed an answer.  248 S.W.3d at 168.  Instead, the situation here is akin to mere
negligence; there is nothing to indicate that Farmer intentionally chose not to
answer the suit.  Although his
explanation and failure to act may be unreasonable behavior for an attorney, it
does not indicate a conscious decision to avoid answering the suit.  See
Cervantes v. Cervantes, No. 03-07-00381-CV, 2009 WL 3682637, at *8 (Tex.
App.––Austin Nov. 5, 2009, no pet.) (mem. op.). 
Accordingly, we conclude and hold that appellants presented evidence
satisfying the first Craddock factor.

Appellants Presented Evidence of a
Meritorious Defense

          Setting
up a meritorious defense does not require proof “in the accepted sense.”  Dolgencorp,
288 S.W.3d at 927–28.   Rather, the
motion sets up a meritorious defense if it alleges facts which in law would
constitute a defense to the plaintiff’s cause of action and is supported by
affidavits or other evidence providing prima facie proof that the defendant has
such a defense.  Id. at 928.  Once such
requirements are met, controverting evidence offered by the nonmovant should
not be considered.  Id.

          Appellants
attached the affidavit of Billy Robinson, the general manager of the funeral
home, to the motion to set aside.  He avers
that, to the best of his knowledge, the funeral home did not lose Don Briscoe’s
remains and did not substitute his remains “as alleged in the petition.”  They also attached to the second supplement
the affidavit of Timothy Rolfs, the funeral home’s market manager, along with a
copy of a letter Rolfs had written to the Texas Funeral Services Commission.  In the letter, Rolfs explains the funeral
home’s usual practices with regard to cremated remains and appellants’ version
of what happened specifically regarding Don Briscoe’s remains.  According to Rolfs, a funeral home employee
was inventorying temporary urns, found Don Briscoe’s, called Beverly Briscoe to
see if she wanted the temporary urn, learned she had a permanent urn with what
she thought were Don’s remains, and asked if he could come check the permanent
urn.  The funeral home employee then went
to Beverly’s house, picked up the permanent urn, took it back to the funeral
home, opened it to check the medallion inside and verify that it matched the
number for Don Briscoe, then returned the urn to Beverly’s house, where he
showed Beverly’s daughter the remains and medallion inside.

The version of the facts in Rolfs’s letter
contradicts the factual allegations in appellees’ petition, upon which all of
their claims are based:  that the funeral
home employee “discovered that the remains of Don I. Briscoe were, in fact, not
delivered to [appellees] at the time that the urn was delivered” and that
appellants deceived appellees by tricking Beverly into returning the urn so
that the employee could surreptitiously place remains inside.  Appellees further alleged that they do not
know whose remains are now inside the urn. 
In effect, appellants contend that the urn always contained Don’s remains,
that they never substituted his or any other person’s remains in the permanent
urn, and that the employee took the urn merely to verify that fact.  Appellees, on the other hand, maintain that
there were no remains in the permanent urn until the funeral home took it and placed
unknown remains inside.  If appellants’
version of the facts is found to be true, appellees’ claims––which are all
based on their alleged version of events––must necessarily fail.  Accordingly, we conclude and hold that
appellants set up a meritorious defense to appellees’ claims.  See id.
at 928–29; Anderson v. Anderson, 282
S.W.3d 150, 155 (Tex. App.––El Paso 2009, no pet.) (“The true test is whether
or not the defense raised and supported with evidence would change the result
of the default judgment.”).

Appellees Did Not Prove They Would Be Injured
by New Trial or Delay

Appellants further contend
that there is no evidence that appellees would be unduly delayed or otherwise
injured by a new trial.  Appellants
alleged in their motion to set aside that they “offered to compensate opposing
counsel for his time in obtaining a default judgment so that [appellees] are not prejudiced.”  [Emphasis added.]  Appellees contend that appellants did not
meet this Craddock prong because they
never stated that they were ready, willing, and able to go to trial immediately;
appellees also contend that any offer to compensate their attorneys for time
spent on the default judgment was inadequate.

“Once a defendant
has alleged that granting a new trial will not injure the plaintiff, the burden
of going forward with proof of injury shifts to the plaintiff.”  Director,
State Employees Workers' Comp. Div. v. Evans, 889 S.W.2d 266, 270 (Tex. 1994).  The purpose of this third element of the Craddock test is to protect a plaintiff
against the sort of undue delay or injury that would disadvantage her in
presenting the merits of her case at a new trial, such as a loss of witnesses
or other valuable evidence; evidence of a delay in obtaining compensation for
injuries for which a plaintiff is entitled is not the type of injury that this
prong speaks to.  Id. at 270.

Here, only three of the seven plaintiffs testified
at the default judgment hearing; appellees did not allege that any valuable
evidence would be lost or that essential witnesses would be unavailable for a
new trial.  Appellees likewise offered no
other evidence that they would be injured by the granting of a new trial; the
only evidence put forward was that an offer by appellants’ counsel to reimburse
appellees’ counsel $500 would be inadequate to compensate appellees’ counsel
for his time spent obtaining the default judgment.  Finally, the absence of a statement by
appellants that they are willing to go to trial immediately is not
dispositive.  Id. at 270 n.3.; Jaco v.
Rivera, 278 S.W.3d 867, 873–74 (Tex. App.––Houston [14th Dist.] 2009, no
pet.).  Accordingly, we conclude and hold
that appellants met the third Craddock
factor because they alleged that appellees would not be prejudiced by a new
trial, and appellees failed to bring forward any evidence proving that they
would be injured.  See Evans, 889 S.W.2d at 270 (“The willingness of a party to go to
trial immediately and pay the expenses of the default judgment are important
factors for the court to look to in determining whether it should grant a new
trial [but] are not dispositive of whether the motion should be granted.”).

Having determined that appellants met their burden
as to all three Craddock factors, we
conclude and hold that the trial court abused its discretion by denying their
motion to set aside the default judgment. 
We sustain appellant’s second issue.

Conclusion

          Having sustained appellants’ first and
second issues, we reverse the default judgment for appellees and remand the
case for trial.[4]

 

 

                                                                             
 
 
 
 
 
 
 
 TERRIE LIVINGSTON

                                                                             
 
 
 CHIEF JUSTICE

 

PANEL:  LIVINGSTON, C.J.;
DAUPHINOT and MCCOY, JJ.

 

DELIVERED:  September 30, 2010











[1]Appellants
characterize the extension as a Rule 11 Agreement, and, as evidence of the
agreement, they submitted a thank–you letter from appellants’ in-house
litigation counsel, which is signed by both appellants’ and appellees’
attorneys, as Exhibit A to their motion for default judgment.





[2]The default judgment
did not award appellees relief or damages against the two named defendants who
were never served.  However, appellees
nonsuited their claims against them on November 25, 2008, thus making the default
judgment final and appealable.  Farmer v. Ben E. Keith Co., 907 S.W.2d
495, 496 (Tex. 1995); Sheraton Homes,
Inc. v. Shipley, 137 S.W.3d 379, 381 (Tex. App.––Dallas 2004, no pet.).





[3]The second supplement
included an affidavit disputing appellees’ allegations in the suit and
attempting to establish defenses to the individual claims.  In addition, appellants challenged the
damages award.





[4]Having
determined that the default judgment should be set aside, we need not address
appellants’ third issue challenging the legal and factual sufficiency of the
damages awarded by the trial court.  See Tex. R. App. P. 47.1.; Horsley-Layman v. Adventist Health
Sys./Sunbelt, Inc., 221 S.W.3d 802, 809 (Tex. App.––Fort Worth 2007, pet.
denied).