

NUMBER 13-12-00777-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

HORACIO CASTILLO,
INDIVIDUALLY AND D/B/A
CASTILLO ENGINEERING,                                              Appellant,

v.

ADOLFO ZORRILLA AND
DELIA ZORRILLA,                                                        Appellees.

**On appeal from the 197th District Court
of Cameron County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Perkes
Memorandum Opinion by Justice Garza**

Appellant, Horacio Castillo, a professional engineer, was sued by appellees Adolfo and Delia Zorrilla for allegedly committing violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"). *See* TEX. BUS. & COM. CODE ANN.

§§ 17.41–.63 (West Supp. 2011). Because Castillo did not appear at trial, the trial court rendered a default judgment in favor of the Zorrillas which Castillo, pro se, now challenges on appeal. We affirm.

## I. BACKGROUND

The underlying lawsuit arose from the Zorrillas' construction of a residence in Laguna Vista, Texas. In their live petition, dated December 1, 2010, the Zorrillas alleged that Castillo performed a windstorm inspection of the property but breached DTPA requirements by failing to inform them that he was not a qualified windstorm inspector at the time he performed the inspection. *See id.* § 17.46(b)(5) (stating that "false, misleading, or deceptive acts or practices" include "representing that . . . a person has a sponsorship, approval, status, affiliation, or connection which he does not"). More specifically, the Zorrillas alleged that they received a letter from the Texas Department of Insurance ("TDI") on December 3, 2008 stating that Castillo's appointment as a qualified windstorm inspector was "revoked on October 10, 2008 (one month before closing) because he failed to substantiate adequate information for windstorm certification on August 2, 2008." The Zorrillas alleged that Castillo's failure to disclose this information amounted to a misrepresentation that their home was windstorm-certified at the time of closing. *See id.* § 17.46(b)(24) (stating that "false, misleading, or deceptive acts or practices" include "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure . . . was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed"). The Zorrillas requested actual and exemplary damages, arguing that, as a result of Castillo's

misrepresentation, they were "forced to enter in an alternate, and more expensive, insurance contract." The Zorrillas also sued Sergio Segoviano, the contractor, for faulty construction of the home.[1]

Castillo was served with the lawsuit and filed an answer pro se. In the answer, Castillo conceded that, on May 14, 2008, the TDI "suspended indefinitely the issuance of any and all of my WPI-2 certifications as a windstorm inspector." However, he denied that he certified the subject property as windstorm compliant. According to Castillo, Segoviano paid him a "partial advance payment" to perform inspections on the home when he was still qualified as an inspector, but Segoviano "never called me to perform any inspections of the home during construction." Castillo stated that he had an oral agreement with Segoviano to inspect certain properties in Cameron County but that he never received full final payment for the certification and that any agreement he had with Segoviano was therefore "null and void."[2] Castillo averred that he had no written or oral contract with the Zorrillas to perform any inspection. He stated that he informed Segoviano of the revocation of his windstorm inspector certification in May 2008, "with ample time to hire another qualified windstorm inspector prior to the closing date." He contended that "it was Mr Segoviano's sole obligation to inform Mr Zorrilla that I was no longer eligible to certify the house."

In answers to interrogatories propounded by the Zorrillas, Castillo acknowledged that his "field inspector," Arturo Espinosa, performed "[a]pproximately 10 inspections" of

---

[1] The Zorrillas and Segoviano subsequently reached a settlement agreement. Segoviano is not a party to this appeal.

[2] Castillo also noted that, though Segoviano "never contacted me to request reimbursement of the partial payment," he would be willing to reimburse the partial advance payment if Segoviano contacted him in writing.

3

the subject property between May and August 2008. The inspections stopped when Castillo's windstorm inspector qualification was revoked. Castillo stated that he instructed Espinosa to inform Segoviano of the revocation.

On February 15, 2011, the trial court rendered an order setting a pre-trial hearing for August 12, 2011 and trial for August 15, 2011. For reasons unclear from the record, those settings were rescheduled to August 31, 2012, and September 4, 2012, respectively, by order dated May 14, 2012. On September 4, 2012, the Zorrillas orally moved for a continuance. On October 16, 2012, the trial court rendered an "Order Granting Last Continuance" setting the cause for trial on November 16, 2012.

Trial went forward as scheduled on November 16, 2012. Castillo did not appear. The Zorrillas did appear, however, and Adolfo Zorrilla testified that Segoviano was to contract with Castillo to certify the subject property as windstorm compliant so that the Zorrillas could obtain insurance for windstorm damage.[3] He stated that, at the time the property sale closed in August 2008, he was unaware that Castillo's inspector qualification was revoked, and he was under the impression that his home was windstorm certified. He found out that the property was not windstorm certified when his insurance company called him to revoke his policy in the summer of 2009. According to Adolfo, his annual insurance premium increased by $6,000 as a result of the error and he has had to pay these increased premiums since 2008. He also produced four checks, totaling $9,551.60, which he stated he spent in order to get the house repaired and certified after discovering the error.

_____

[3] Properties certified as windstorm compliant are eligible to be insured by the Texas Windstorm Insurance Association ("TWIA"). *See* TEX. INS. CODE ANN. § 2210.251 (West Supp. 2011). TWIA "is the state's insurer of last resort for wind and hail coverage in the fourteen (14) coastal counties and parts of Harris County (east of Highway 146)." About TWIA, http://www.twia.org/AboutTWIA/tabid/56/Default.aspx (last visited Aug. 15, 2013).

When counsel asked how Castillo "t[ook] advantage of your lack of knowledge about the lack of windstorm insurance on your new home," Adolfo stated: "He certified the plans with his engineering—professional engineering license leading me to believe that he was certified, a windstorm certified engineer, that I would get windstorm certification."

After hearing Adolfo's testimony, the trial court rendered default judgment against Castillo awarding the Zorrillas $38,039.10, including damages and attorney's fees. Castillo did not file a motion for new trial. However, he did timely file a notice of appeal challenging the default judgment.

## II. DISCUSSION

The "Issues Presented" section of Castillo's brief, *see* TEX. R. APP. P. 38.1(f), contains twelve unnumbered paragraphs alleging the following: (1) the trial court "failed to recognize [Castillo's] written plea that [he] was not violating the [DTPA]"; (2) the trial court "failed to recognize Segoviano's motive to evade liability of the windstorm certification by making a false statement"; (3) the trial court "failed to recognize Arturo Espinosa as a key witness"; (4) the trial court "failed to receive Segoviano's affidavit" at trial; (5) Adolfo Zorrilla gave "false and misleading" testimony; (6) the trial court "failed to recognize that the [Zorrillas] never produced a WPI-2 windstorm certificate signed by [Castillo]"; (7) the trial court "failed to recognize that the [Zorrillas] did not file a written complaint against [Castillo] with the Consumer Protection Division of the Attorney General's office"; (8) "Espinosa has stated that allegedly Segoviano deviated from the engineered drawings and altered the house plans during construction without notifying the engineer"; (9) Adolfo Zorrilla "is tampering with [Castillo's] witness [Espinosa] in

5

order to restrain his testimony in this case"; (10) the Zorrillas "failed to disclose" to the trial court "that they have hired two engineers . . . to assist in windstorm-certifying their house" but that neither engineer "has been successful"; (11) the Zorrillas "failed to disclose" to the trial court that "the damages sought included engineer fees and construction fees for work on the house that did not result in the windstorm certification of the house"; and (12) the Zorrillas "failed to disclose" to the trial court that "the damages sought for insurance premiums have been outrageous" and that "they have been overly complacent in hiring engineers to certify their house over the last five years."  In his prayer for relief, Castillo asks that we reverse the trial court's judgment and "dismiss the case" against him for these reasons.  We decline to do so.

First, to the extent that Castillo's issues involve the admittance or credibility of evidence at trial, Castillo did not appear at trial, and so the trial court did not have the opportunity to consider those issues.  Those issues are therefore not preserved for our review.  *See* TEX. R. APP. P. 33.1.

Second, even if we were to (as the Zorrillas do) construe Castillo's issues as generally challenging the sufficiency of the evidence supporting the judgment—an issue which ordinarily may be raised for the first time on appeal, *see* TEX. R. APP. P. 33.1(d)— that issue would not be meritorious.  A default judgment, including one rendered after the defendant has filed an answer, may be set aside and a new trial granted only when the defendant establishes that:  (1) the failure to appear was not intentional or the result of conscious indifference, but was the result of an accident or mistake; (2) the defendant has a meritorious defense; and (3) a new trial will occasion no delay or otherwise injure the plaintiff.  *Ivy v. Carrell*, 407 S.W.2d 212, 213 (Tex. 1966) (citing *Craddock v.*

*Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939)); *see Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 930 (Tex. 2009) (noting that, when the defendant has filed an answer, "a trial court may not render judgment on the pleadings and the plaintiff is required to offer evidence and prove all aspects of its claim" but that "the uncontested proceedings are often abbreviated and perfunctory" and that, "[i]n the absence of opposing counsel, an uncontested trial, like an uncontested damages hearing, is less likely to result in a fully-developed factual record").  Because Castillo did not file a post-judgment motion with the trial court seeking to set aside the judgment, such as a motion for new trial, the record is devoid of any evidence establishing any of the *Craddock* elements.  *See* TEX. R. CIV. P. 324(b)(1) ("A point in a motion for new trial is a prerequisite to . . . [a] complaint [on appeal] on which evidence must be heard such as . . . failure to set aside a judgment by default . . . .").[4]  Therefore, regardless of whether the evidence adduced at trial was sufficient to support the judgment, we have no choice but to overrule each of Castillo's issues.  *See id.*

---

[4] Neither party cites *Craddock* in their appellate briefs, but there is no doubt that it applies here. *See Massey v. Columbus State Bank*, 35 S.W.3d 697, 699 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) ("Because this is a direct appeal from a default judgment, [appellants] are required to prove the *Craddock* elements."); *see also Harris v. Burks*, No. 01-06-00128-CV, 2007 Tex. App. LEXIS 4808, at *4– 5 (Tex. App.—Houston [1st Dist.] June 21, 2007, no pet.) (mem. op.).  We note that, even if Castillo had filed a post-judgment motion with the trial court making the same assertions that he makes on appeal, that would not have been sufficient to establish his entitlement to a new trial because he does not address the first or third elements of *Craddock*.  *See Massey*, 35 S.W.3d at 699 ("[Appellants] did not argue any of the *Craddock* elements in their brief, or in any post-judgment motions.  Even if [appellants] had set forth proof of the points of error they assert in their brief, it would not be sufficient in this case. Proof of a meritorious defense would only satisfy the second element of *Craddock*.").

### III. Conclusion

The trial court's judgment is affirmed.

                               _____
DORI CONTRERAS GARZA,
Justice

Delivered and filed the
30th day of August, 2013.