

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00191-CV

**IN THE INTEREST OF D.R.P.**, a Child

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-PA-03045
Honorable Charles Montemayor, Judge Presiding[1]

Opinion by:     Catherine Stone, Chief Justice

Sitting:         Catherine Stone, Chief Justice
                 Marialyn Barnard, Justice
                 Luz Elena D. Chapa, Justice

Delivered and Filed:   August 6, 2014

REVERSED AND REMANDED

The Texas Department of Family and Protective Services was appointed temporary sole managing conservator of D.R.P. after filing a petition to terminate the parental rights of D.R.P.'s mother, J.E., and D.R.P.'s father, M.P. After a final hearing, however, the Department was released as managing conservator, M.P. was appointed as managing conservator, and J.E. was appointed as possessory conservator. On appeal, J.E. challenges the trial court's failure to enter a standard possession order with regard to her possession and access and further challenges the trial court's denial of her motion for new trial. Because J.E. established her right to a new trial, we reverse the trial court's order and remand the cause for further proceedings regarding the terms and conditions of J.E.'s possession and access.

---

[1] The Honorable Martha Tanner presided over the hearing on the motion for new trial.

## PROCEDURAL HISTORY[2]

On February 20, 2014, the underlying cause was called for a final hearing on a 9:00 docket. During the announcements, the clerk of the court announced that J.E.'s attorney had called and stated she would be ten or fifteen minutes late. D.R.P.'s attorney ad litem announced that the parties had reached an agreement. The Department's attorney announced that J.E.'s attorney "was part of that," and D.R.P.'s attorney ad litem also confirmed that J.E.'s attorney "was part of that agreement." The trial court took a brief recess and called the case for hearing at 9:16. Neither J.E. nor J.E.'s attorney was present at the hearing.

The Department's attorney informed the trial court that "we were all here Tuesday and we all talked about this case." The Department's attorney further stated, "I believe we have an agreement. … And that included [J.E.'s attorney]." The Department's attorney announced that the case resulted in a "successful reunification" and was requesting that M.P. be named sole managing conservator and J.E. be named as possessory conservator of D.R.P.

Allison Shoot, the case worker for the Department, was the only witness who testified at the hearing. Shoot stated that M.P. had completed all services, and D.R.P. had been placed with him for some time. With regard to J.E.'s rights, Shoot testified as follows:

> Q.     And mom is aware of this and basically she just wanted to be able
> to be a possessory conservator and have some supervised visits?
> A.     She did.
>                \*\*\*
> Q.     All right. And you're asking specifically that mom be a possessory
> conservator with supervised visitation, basically per the mutual agreement of the
> parties, which would be the father and the mother?
> A.     Yes.
> Q.     And the father has been supervising visits?
> A.     He has.
>                \*\*\*

---

[2] Both briefs contain references to documents that are not included in the clerk's record filed in this appeal. This opinion will only reference documents that are included in the appellate record.

Q.      And do you believe all of this is in the best interest of this child, [D.R.P.]?

A.      We do.

At the conclusion of Shoot's testimony on direct examination, the trial court asked about the agreement on visitation, and Shoot stated "standard." The Department's attorney, however, immediately corrected her and stated, "Supervised, but per the mutual agreement. I guess we ought to put it in twice a month just as a backup. And right now they're — it's really per the mutual agreement of the parties, Judge."

On cross-examination by D.R.P.'s attorney ad litem, Shoot clarified:

Q.      All right. And just to be clear [D.R.P.] has been living with her dad since November of last year?

A.      Correct.

Q.      And the mother has moved to another state?

A.      She has.

Q.      To Indiana. As far as you know she's moved to Indiana?

A.      Yes, ma'am.

Q.      So she's not even in Texas, so it would be an agreement in terms of visitation?

A.      Yes.

After all parties rested, the trial court asked D.R.P.'s attorney ad litem if she supported the agreement, and D.R.P.'s attorney ad litem stated that she supported the agreement and the agreement was in D.R.P.'s best interest. The trial court also asked a representative from child advocates if she supported the agreement, and she stated that she did. The trial court then verbally rendered judgment appointing M.P. managing conservator and J.E. possessory conservator with "visitation as detailed in the agreement as testified to." The trial court's written order provides that J.E. would have possession and access as follows, "Location of visits to be determined by father two times per month for one hour or as per the mutual agreement of the parties." The trial court's written order was signed on the day of the hearing, February 20, 2014, and was approved as to form by J.E.'s attorney.

On March 21, 2014, J.E. filed a verified motion for new trial. A hearing on the motion for new trial was held on May 9, 2014.[3] The motion for new trial appears to have been overruled by operation of law since no signed order is included in the clerk's record.[4]

## RENDITION OF JUDGMENT

In her first issue, J.E. contends that the trial court's final order is inconsistent with its verbal rendition. J.E. asserts that the "the only testimony regarding visitation/possession was that it was to be 'standard;'" therefore, in verbally rendering that visitation would be "as detailed in the agreement as testified to," the trial court necessarily rendered standard visitation. We disagree with J.E.'s reading of the record. During her testimony, Shoot testified that J.E. was to be named possessory conservator with supervised visitation per the mutual agreement of the parties. Although Shoot mistakenly stated "standard" in response to the trial court's subsequent question, Shoot reaffirmed on cross-examination that visitation was to be in accordance with the parties' agreement. J.E.'s first issue is overruled.

## SUFFICIENCY OF THE EVIDENCE

In her second issue, J.E. contends the evidence is insufficient to support restrictions on her possession of D.R.P. "The trial court has broad discretion in fashioning restrictions on a parent's possession and access that are in the best interest of the child; however, restrictions on possession cannot exceed those [necessary] to protect the best interest of the child, and there must be record evidence to support a finding that a restriction is in the child's best interest." *In re S.A.H.*, 420

---

[3] At the hearing, J.E.'s attorney refers to the motion for new trial having initially been denied by the associate judge; however, the appellate record contains no order signed by the associate judge or a reporter's record from a hearing on the motion for new trial presided over by the associate judge.

[4] The Department contends the motion for new trial was overruled by operation of law on May 6, 2014, which was before the trial court conducted its hearing on the motion. Because J.E. timely filed a motion for new trial, however, the trial court had "plenary power to grant a new trial … until thirty days after all such timely filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first." TEX. R. CIV. P. 329b(e). The trial court's hearing on the motion for new trial was conducted within its plenary power.

S.W.3d 911, 928 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (internal citations omitted); *see also Moreno v. Perez*, 363 S.W.3d 725, 739-40 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (same).

J.E. concedes that the presumption in favor of a standard possession order is rebuttable and restrictions may be imposed based on the best interest of the child. *See* TEX. FAM. CODE ANN. § 153.193, 153.252 (West 2014). J.E. argues, however, that the record contains no evidence to rebut the presumption or to impose restrictions. We disagree. As previously noted, Shoot testified that supervised visitation per the mutual agreement of the parties was in D.R.P.'s best interest, which was supported by D.R.P.'s attorney ad litem and the child advocates representative in response to the trial court's questions. Accordingly, the record contains sufficient evidence to support the order as rendered by the trial court. J.E.'s second issue is overruled.

### MOTION FOR NEW TRIAL

Because neither J.E. nor J.E.'s attorney appeared at the final hearing, the Department agrees that the trial court's order was a post-answer default judgment. A post-answer default judgment "should be set aside and a new trial granted when the defaulting party establishes that (1) the failure to appear was not intentional or the result of conscious indifference, but was the result of an accident or mistake; (2) the motion for new trial sets up a meritorious defense; and (3) granting the motion will occasion no delay or otherwise injure the plaintiff." *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 925-26 (Tex. 2009) (citing *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (Tex. 1939)). "When a defaulting party moving for new trial meets all three elements of the *Craddock* test, then a trial court abuses its discretion if it fails to grant a new trial." *Id*.

### A.    *Absence of Intent or Conscious Indifference*

With regard to the first element, in order for a failure to appear to be intentional or due to conscious indifference, it must be "without adequate justification." *Id*. at 926 (quoting *Smith v. Babcock & Wilcox Const. Co.*, 913 S.W.2d 467, 468 (Tex. 1995)). "Proof of such justification — accident, mistake or other reasonable explanation — negates the intent or conscious indifference" element. *Id*. In this case, J.E.'s verified motion for new trial states, "[J.E.'s] attorney notified the court clerk before docket call that she was running late due to heavy traffic and the court heard the case with neither [J.E.] nor [J.E.'s] attorney being present." We hold this is sufficient proof of justification to establish that J.E.'s failure to appear was not intentional or the result of conscious indifference, satisfying the first element of the *Craddock* test. Although the Department argues that this statement only establishes justification for the failure of J.E.'s attorney to appear, the Department cites no authority for the proposition that J.E. could not rely on her attorney to make her appearance. *See* TEX. R. CIV. P. 7 ("Any party to a suit may appear and prosecute or defend his rights therein, either in person or by an attorney of the court.").

### B.    *Meritorious Defense*

With regard to the second element, "[s]etting up a meritorious defense does not require proof in the accepted sense." *Id*. at 927-28 (internal citations omitted). "Rather the motion sets up a meritorious defense if it alleges facts which in law would constitute a defense to the plaintiff's cause of action and is supported by affidavits of other evidence providing prima facie proof that the defendant has such a defense." *Id*. at 928. "Once such requirements are met, controverting evidence offered by the nonmovant should not be considered." *Id*.

In this case, J.E.'s attorney verified in the motion for new trial that "other parties to this case represented that certain terms regarding visitation had been agreed upon by [J.E.] when in fact she had not consented to them." Because the trial court rendered judgment that visitation was

to be in accordance with the parties' agreement, proof that J.E. never entered into any such agreement is sufficient to set up a meritorious defense.[5] *See Ferguson & Co. v. Roll*, 776 S.W.2d 692, 698-99 (Tex. App.—Dallas 1989, no writ) (holding evidence denying existence of agreement sufficient to set up meritorious defense); *see also Behr Southerland Const., Inc. v. H.W. Wahlers, Inc.*, No. 04-00-00679-CV, 2001 WL 729292, at *2 (Tex. App.—San Antonio June 29, 2001, no pet.) (holding sworn statements in verified motion for new trial sufficient to set up meritorious defense even absent any other affidavits or evidence) (not designated for publication). Accordingly, we hold J.E. satisfied the second element of the *Craddock* test.

### C.      *No Delay or Injury*

With regard to the third element of the test, once J.E. alleged in her motion that granting a new trial would not injure the Department, the burden of proof shifted to the Department to prove injury. *Dolgencorp of Tex., Inc.*, 288 S.W.3d at 929. "The purpose of the third element of the *Craddock* test [] is to protect a plaintiff against the sort of undue delay or injury that would result in a disadvantage when presenting the merits of the case at a trial, such as a loss of witnesses or other valuable evidence." *Id.* The only harm the Department relies on in its brief is that it was released as temporary managing conservator. This release, however, was necessary in order to appoint M.P. as managing conservator. The Department does not assert, and did not allege in response to J.E.'s motion, any specific injury with regard to proving the terms of J.E.'s possession and access, such as the loss of a witness or other valuable evidence. Accordingly, the Department

---

[5] The Department also argues that J.E. did not present any evidence to contradict Shoot's testimony that "it was in the best interest of the child to allow supervised visitation by agreement." This testimony, however, presupposes an agreement. The Department also seeks to rely on two reports in the clerk's record regarding the underlying facts of the case; however, the reporter's record from the final hearing clearly establishes that the trial court relied on the attorney's representations and Shoot's testimony regarding the existence and terms of the parties' agreement. Even if the Department had submitted these reports or other controverting evidence at the motion for new trial hearing, the trial court could not have considered any controverting evidence once J.E. had set up her meritorious defense. *See Dolgencorp of Tex., Inc.*, 288 S.W.3d at 928.

"did not prove that the granting of a new trial would cause such harm or injury as would preclude the granting of a new trial." *Id*. Therefore, J.E. satisfied the third element of the *Craddock* test.

J.E.'s third issue is sustained.

## CONCLUSION

Because J.E. satisfied all three elements of the *Craddock* test, the trial court abused its discretion in denying her motion for new trial. The portion of the trial court's final order setting forth the terms and conditions of J.E.'s possession and access is reversed, and the cause is remanded for a new trial on that issue.

Catherine Stone, Chief Justice