

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-16-00388-CV
_____

**ELIAS BALDERAS, APPELLANT**

**V.**

**LINDSEY FULLINGIM AND MATTHEW MONDRAGON, APPELLEES**

On Appeal from the 237th District Court
Lubbock County, Texas
Trial Court No. 2014-512,625; Honorable Les Hatch, Presiding

July 26, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Elias Balderas, appeals a judgment rendered in his favor following a jury trial of his personal injury claim against Appellee, Lindsey Fullingim, on the issue of damages.[1]  By this appeal, Balderas asserts a single issue with two subparts, i.e., the trial court erred in denying his motion for a new trial because (1) the evidence was

---

[1] In its verdict, the jury did not attribute any negligence to Appellee, Matthew Mondragon.

factually insufficient to justify the jury's finding of "zero" damages for past and future physical impairment and (2) the denial of his motion for new trial was an abuse of discretion. We affirm the trial court's judgment.

BACKGROUND

In October of 2013, Balderas was a passenger in a company pickup being driven by Matthew Mondragon when it was struck from behind by Fullingim.[2] In August 2014, Balderas filed his original petition against Fullingim asserting actions for negligence and negligence per se, seeking compensation for injuries he allegedly incurred as a result of that accident. In March 2015, he amended his original petition to assert an action against Mondragon for negligence.[3]

TRIAL

Balderas's claims against Fullingim and Mondragon were tried before a jury. The evidence established that on October 9, 2013, Mondragon was driving an Advanced Pavement Maintenance, Ltd. company pickup with his stepfather, Balderas, when Balderas spilled his iced tea on the console and Mondragon's seat. Balderas told Mondragon to pull over, so they could clean up the tea. Balderas removed his seat belt as Mondragon slowed down to turn into an alleyway. As Mondragon was making the turn, Fullingim struck the pickup from behind.

---

[2] Balderas also asserted actions against Stephanie Day for negligent entrustment and the Phoenix Insurance Company, d/b/a Travelers (Travelers), for an uninsured/underinsured motorist claim. In April 2016, the trial court severed Balderas's claims against Day and Travelers from his other claims.

[3] In addition to Matthew Mondragon, he asserted actions under the theory of *respondeat superior* against Advanced Pavement Maintenance, Ltd., Lakeside Paving Materials, LLC, Individually and as the General Partner of Advanced Pavement Maintenance, Ltd., and Advanced Pavement of Lubbock, LLC (collectively referred to as Advanced Pavement). In March 2016, the trial court granted summary judgment in favor of Advanced Pavement.

Balderas testified that as a result of the collision he hit the dashboard and began to fade in and out of consciousness. When he opened the door to exit the pickup, he testified that he fell to the ground where he remained until the EMS loaded him into the ambulance. Somewhat differently, the EMS records show Balderas suffered no loss of consciousness and was only having minor pain to his neck following the accident. The records revealed that Balderas was ambulatory upon arrival and that he appeared to be in no distress. When presented with the EMS records during cross-examination, Balderas admitted that he was only having minor pain when the EMS arrived at the accident.

Officer Kevin Russell investigated the accident. His investigation determined that Balderas complained of some minor injuries, but nothing physical.[4] Officer Russell's report stated that Fullingim also had a possible injury. Fullingim later testified she had a sore arm post-accident but did not receive any medical treatment. Mondragon testified he was not injured and did not receive any treatment.

Balderas was transported to the Covenant Medical Center ER for examination. The ER records show he was ambulatory upon arrival. His primary complaint was a slight pain to his neck. He denied any numbness or a tingling sensation to his hands, feet, or other areas of the body.

While he was in the ER, a CT scan of his spine was completed and showed "[n]o acute fracture or significant misalignment." He was diagnosed with a cervical sprain and released after spending approximately two hours at the hospital. He testified, and his

---

[4] On cross-examination, Balderas agreed with counsel that he probably would not have "slammed" into the dashboard had he been wearing his seatbelt.

medical records confirmed, that he could have returned to work the following Monday with no restrictions. The records also contained a statement that he could have returned to work the next day, Thursday, with no restrictions. He testified that immediately after the accident, he was unable to go to the restroom by himself for several days. He also testified that he "limped about," while requiring support on his right side.[5] Balderas never returned to work at Advanced Pavement.[6]

Several days after the accident, Balderas was referred by his attorney to Merritt Chiropractic for treatment. His chiropractor noted in his records that he had experienced pain since the day of the accident and had some loss of range of movement. Balderas testified that during his chiropractic treatment, he returned to the emergency room because of abdominal pain and rectal bleeding caused by the accident. During cross-examination, however, Balderas acknowledged his medical records indicated he had been periodically suffering from abdominal pain and rectal bleeding for three years prior to the accident. In addition, during his cross-examination, counsel questioned Balderas on his responses to interrogatories wherein he stated he was treated in Amarillo on November 30, 2013, for post-traumatic stress disorder symptoms related to the accident. The medical records for the November visit, however, showed that he was treated because he ate a bad burrito that caused him stomach issues. In December 2013,

---

[5] Two weeks later, he testified he went on a fishing trip with his son.

[6] Balderas was terminated from Advanced Pavement the day after the accident. The reason for his termination was disputed. Evidence indicated he was terminated because he failed to undergo a drug screen after the accident in accordance with company policy; he had earlier claimed more hours on his time card than he had worked; he had used his company truck for personal purposes; and he was disliked by his supervisor because he was a new employee who was also new to Lubbock.

Balderas was released from chiropractic treatment with a good prognosis[7] and an unrelated health issue that needed addressing. In testimony, he admitted the unrelated health issue was his prior abdominal pain and rectal bleeding.

Balderas testified that he was hired by Caprock Tire in early 2014. He quit days later because he was unable to move large tractor tires and mount them on the rear of the tractors. In April 2014, he was hired by Hills Hot Rods where he was able, with the help of an assistant, to do engine and transmission swaps without the assistance of a lift.[8] In April 2015, Balderas quit this job even though his employer wanted him to stay.[9]

Approximately eight months after suit was filed and a year and a half after the accident, Balderas visited the UMC Physician Clinic in April 2015 complaining of upper back and neck pain due to a car accident. Balderas's musculoskeletal examination showed he had a normal range of motion and normal strength although Balderas complained of pain when his arms were elevated. His x-rays appeared normal.[10] At the

---

[7] His chiropractor noted that he had the following impairments related to his range of motion at the conclusion of his treatment: flexion was 45%; right lateral flexion 30%; left lateral flexion was 45%; right rotation was 65%; and left rotation was 70%.

[8] Balderas testified on direct examination that he sought the job at Hills Hot Rods because he was having trouble meeting expenses at home. On cross-examination, Balderas agreed with counsel that at the time he was hired by Hills Hot Rods, he was under a legal obligation to seek employment because he was on probation.

[9] From August 2015 through trial, he remained employed at Complete Auto Repair doing diagnostics, brake work, and oil changes.

[10] His CT scan showed straightening of the C-spine with loss of the normal lordotic curvature suggesting muscle spasm and minimal anterior osteophytic spurring at C4-C5. Otherwise, no fracture was seen—normal. The read by the radiologist was minimal amount of rotary scoliosis.

time of trial, he was seeing an orthopedic physician and was being treated with physical therapy.

Balderas also testified he was suffering from physical limitations due to the accident. These limitations included an inability to run, shoot a basketball, or throw a football like he used to. He was also unable to, without pain, drive long distances, wash and dress himself, walk or sit, stand at work all day, or play games that required a lot of running or standing. He also experienced difficulty sleeping at night. He further complained that when he was examined by the ER physicians, they would simply give him pain medication and send him home rather than investigating the root problem of his physical symptoms.[11]

JUDGMENT AND MOTION FOR NEW TRIAL

In August 2016, the trial court entered its judgment in accordance with a jury verdict that found Fullingim contributed to the accident or injuries 55%, Balderas contributed 45%, and Mondragon contributed 0%. The jury awarded Balderas $300 for physical pain sustained in the past, necessary medical expenses totaling $5,277.01,[12] and $336 as lost earnings and earning capacity sustained in the past,[13] for a total of $5,913.01. Based upon Fullingim's proportionate responsibility of 55%, the trial court ordered her to pay Balderas the sum of $3,252.16, plus $1,846.06 in costs. The jury did not award Balderas any damages for the following: physical pain that, in reasonable probability, Balderas

---

[11] Chamie Balderas, his wife, corroborated most of her husband's testimony.

[12] The jury's award of necessary medical expenses was for medical treatment rendered the day of the accident at Covenant Medical Center and CMG Emergency Department and for services rendered by University Medical Center Emergency Medical Service.

[13] This award corresponds to wages at Advanced Pavement for approximately two and a half days.

would sustain in the future; physical impairment sustained in the past; physical impairment that, in reasonable probability, he would sustain in the future; necessary medical expenses that, in reasonable probability, he would sustain in the future; loss of earnings and earning capacity that, in reasonable probability, he would incur in the future; mental anguish sustained in the past; and mental anguish, in reasonable probability, he would incur in the future. Balderas later filed a motion for a new trial which was subsequently denied.

ISSUE ONE

Balderas first asserts that the trial court should have granted his motion for a new trial because the evidence was insufficient for the jury to award "zero" damages for physical impairment sustained in the past and in the future; i.e., the jury's verdict was so against the great weight and preponderance of the evidence as to be manifestly unjust. In support, he cites his and his wife's testimony related to restrictions on his physical activities and a note from his chiropractic examination shortly after the accident that indicated he had some restriction in his range of movement. He next asserts that the trial court abused its discretion in denying his motion for a new trial because the evidence was insufficient to support a verdict of "zero" damages for physical impairment sustained in the past and in the future. We disagree.

STANDARDS OF REVIEW

When a party challenges the factual sufficiency of an adverse finding on an issue on which it had the burden of proof, it must demonstrate on appeal that the adverse finding was against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). Under that standard, we review all the evidence

7

in a neutral light and will reverse only if the evidence supporting the finding is so contrary to the overwhelming weight of the evidence as to make the judgment clearly wrong and manifestly unjust. *Id.*

A jury generally has great discretion in considering evidence on the issue of damages. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 772 (Tex. 2003) ("whether to award damages and how much is uniquely within the factfinder's discretion"). *See also In re State Farm Mut. Auto. Ins. Co.*, 483 S.W.3d 249, 262-63 (Tex. App.—Fort Worth 2016, no pet.) (finding that neither the trial court nor the appellate court may substitute its own judgment for that of the jury). In keeping with the principles that a court may not substitute its judgment for that of a jury and that the jury is the sole judge of the weight and credibility of testimony, courts should not conclude that a jury's failure to award any damages for physical impairment is against the great weight and preponderance of the evidence simply because there is objective evidence of an injury. *Golden Eagle Archery, Inc.,* 116 S.W.3d at 774-75 (collected cases discussed therein). "[A] court should consider only whether the evidence unique to that category [of damages] is so against the great weight and preponderance of evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias." *Id.* at 775.

When the jury is presented with conflicting evidence about the existence and severity of a physical injury and associated pain, the jury can believe all or any part of the testimony and, conversely, it may disregard all or any part of the testimony of any witness. *Id.* at 774-75. That said, a jury award of no damages may be successfully challenged if there is objective, undisputed testimony of a significant injury and the jury could not have compensated the injured party in some other category of damages. *Id.* at 775.

We review a trial court's denial of a motion for a new trial for an abuse of discretion. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009). A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner or without reference to any guiding rules or principles. *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985)).

ANALYSIS—FACTUAL SUFFICIENCY AND ABUSE OF DISCRETION

Here, Balderas contends the evidence was insufficient for the jury to award "zero" damages for physical impairment sustained in the past and in the future. He supports his claim that the jury's verdict was so against the great weight and preponderance of the evidence as to be manifestly unjust by referring us to his and his wife's subjective testimony that he suffered a physical impairment and would likely remain physically impaired in the future as a result of the accident. Although his chiropractor noted that he had some loss in his range of movement shortly after the accident, he was seen in the ER shortly thereafter and his musculoskeletal assessment showed only generalized weakness. There was no evidence in the ER records of a loss of range of motion due to pain in his back and/or neck. Instead, the pain was in his abdomen—an area where he had been suffering pain prior to the accident.

There was no evidence Balderas suffered any observable injuries and the EMS records at the time of the accident show that (1) Balderas suffered no loss of consciousness at the site of the accident, (2) he complained to EMS that he was only having minor pain to his neck, (3) he was ambulatory at the site of the accident and at the time of his admission to the ER, (4) he denied any numbness or a tingling sensation to his hands, feet, or other areas of his body, (5) his CT scan showed no acute fracture or

9

significant misalignment, and (6) he was advised that he could return to work in three days and/or the next day with no restrictions. Further, it was approximately eight months after suit was filed and a year and a half after the accident before he visited a physician clinic complaining of upper back and neck pain. Upon examination at the clinic, his x-rays appeared normal and his musculoskeletal examination showed he had a normal range of motion and normal strength even though he complained of pain when his arms were elevated.

Given the objective evidence that Balderas's injury was only slight and the subjective nature of his and his wife's testimony, we cannot agree to "unfind" the jury's findings and substitute our judgment for that of the jury. While the chiropractor noted that his range of motion was somewhat limited upon examination, the jury was free to believe or disbelieve this was any evidence of physical impairment resulting from the accident. Accordingly, we hold that the evidence was factually sufficient to support the jury's findings and conclude that the jury's findings of "zero" in response to questions of damages for past and future physical impairment are not so against the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust.

Having determined there was sufficient evidence to support the jury's "zero" award of damages for past and future physical impairment, we cannot find that the trial court acted in an unreasonable or arbitrary manner or without reference to any guiding rules or principles by denying Balderas's motion for a new trial. Accordingly, issue one, as to both subparts, is overruled.

CONCLUSION

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice